Charles V. SIMMONS *v.* STATE of Arkansas

CA CR 04-1279                                    234 S.W.3d 321

Court of Appeals of Arkansas
Opinion delivered April 19, 2006

*Michael Loggains*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Clayton K. Hodges*, Ass't Att'y Gen., for appellee.

L ARRY D. VAUGHT, Judge. Appellant Charles Simmons appeals following his conviction by a Cleburne County jury of five counts of rape and one count of producing, promoting, or directing a sexual performance. He was sentenced to a total of 210 years in prison. On appeal, he argues that books, videos, and photographs obtained during a search of his residence were improperly admitted into evidence; that the deposition testimony of a victim who died before trial was improperly admitted into evidence; and that his sentence violates the Eighth Amendment's prohibition on cruel and unusual punishment. We affirm.

At trial, six young men testified against Simmons, all of whom had either lived or been a frequent guest in Simmons's home.[1] Their testimony revealed that Simmons allowed them to abuse controlled substances, drink alcohol, watch pornographic

---

[1] Simmons had legal custody of at least one of the boys.

videos, and look at pornographic pictures on his computer. They recalled raucous parties where both adult men and teenage boys drank heavily, abused drugs, and engaged in sexual activity. The boys testified that Simmons encouraged them to engage in homosexual relations with older men and that they were forced to have sex with Simmons and his older, male friends. One boy described how he passed out from drinking too much alcohol and woke up to find Simmons performing oral sex on him. Many of the boys recalled Simmons taking their photographs in sexually explicit poses. One victim identified photographs presented at trial as ones Simmons had taken of him in seductive poses. Several of the boys stated that they could not recall everything that had happened because they had been so inebriated at the time; however, they stated they often "woke up" naked. One of the boys described being handcuffed to a bed and sodomized with something that felt like "a broomstick." The boys also recounted how Simmons had them strip for him and his male friends.

One of Simmons's co-defendants, Jason Willabanks, testified that he witnessed Simmons performing oral and anal sex on at least two of the boys. Willabanks admitted that he had sex with two of the boys. He also stated that teenagers under the age of eighteen were often at Simmons's home; that he had seen pornographic photographs and videos at Simmons's home; that one of the photographs displayed one of the teenagers passed out and nude; that other photographs illustrated two of the boys posing together in the nude; and that he was aware of the boys stripping for Simmons, but he had never witnessed it.

During the trial, Simmons objected to several exhibits that were introduced into evidence, including five books, entitled *Bayou Boy, Boys of the Night, A Matter of Life and Sex, Growing Up Gay: From Left Out to Coming Out,* and *Seduced: Erotic Tales About Boys with Fun on Their Minds;* five videos, one entitled *Boy's Life,* which told the story of an older male seducing a young boy, and four adult movies; and seven photographs depicting males in sexually explicit poses. He also objected to the introduction of deposition testimony of a witness who had died prior to the trial. The trial judge overruled Simmons's objections and allowed the exhibits and the deposition into evidence.

For his first point on appeal, Simmons contends that the trial court erred in admitting the books, videos, and photographs into evidence. He argues several points, including that the evidence constituted improper character evidence, that it was irrelevant,

and that even if it was relevant, it was more prejudicial than probative. Our supreme court has noted that trial courts have broad discretion with regard to evidentiary rulings, and when reviewing a ruling on the admissibility of evidence, the trial court should not be reversed absent an abuse of that discretion. *Owens v. State*, 363 Ark. 413, 214 S.W.3d 849 (2005). Furthermore, we will only review arguments that have been preserved for appeal; arguments raised for the first time on appeal are not considered. *Porter v. State*, 356 Ark. 17, 145 S.W.3d 376 (2004).

Rule 402 of the Arkansas Rules of Evidence provides that irrelevant evidence is inadmissible. Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The test of admissibility of evidence over an objection for irrelevancy is whether the fact offered into proof affords a basis for rational inference of the fact to be proved. *Barrett v. State*, 354 Ark. 187, 119 S.W.3d 485 (2003). It is sufficient if the fact may become relevant in connection with other facts, or if it forms a link in the chain of evidence necessary to support a party's contention. *Id.* at 198, 119 S.W.3d at 492.

Even if relevant, evidence may nonetheless be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Ark. R. Evid. 403. In addition, evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity with that trait on a particular occasion. Ark. R. Evid. 404(a). In such cases, evidence is not barred by the rule if it is independently relevant and not offered to show merely that the defendant has bad character. *Holt v. State*, 85 Ark. App. 308, 151 S.W.3d 1 (2004). Furthermore, evidence that is offered by the State to corroborate other evidence is relevant. *Smith v. State*, 354 Ark. 226, 118 S.W.3d 542 (2003).

With regard to the books, Simmons argued at trial that the books had no probative value and were only introduced to unfairly prejudice the jury. He complained that the books would inflame the jury to be "possibly disgusted with him [and] with his lifestyle" and that the jury would want to "punish somebody for just having a book like this." On appeal, Simmons argues that the books were inadmissible character evidence, and alternatively, that the prejudice of the books outweighed their probative value. Although the State contends that Simmons raises the character-evidence argument for the first time on appeal, we are satisfied that Simmons's

contention at trial that the books would cause the jury to be disgusted with his lifestyle is enough to preserve his character-evidence argument.[2]

■ On the merits, we agree that the books are only marginally relevant to the case. None of the victims testified that Simmons showed them any pornographic books or used the books to lure them in any way. In fact, it appears the only reason for introducing the books was to inform the jury that Simmons was homosexual. Regardless, we find any error to be harmless in light of the wealth of other evidence (including the testimony, videos, and photos) of Simmons's homosexual lifestyle.

■ With regard to the five pornographic videos, we disagree that those were improperly admitted. Several of the boys testified that Simmons had them watch pornographic videos on a regular basis, many times as a prelude to or in conjunction with engaging in sexual acts. Therefore, the discovery of these videos corroborated the boys' testimony, and we are satisfied that the trial court did not abuse its discretion in admitting the videos.

In challenging the photographs at trial, Simmons argued that they were irrelevant because they did not include photos of any of the victims and because they were more prejudicial than probative. The trial court overruled the objection, specifically ruling that the probative value of the photos was not substantially outweighed by the danger of unfair prejudice. On appeal, Simmons argues the photos were irrelevant, more prejudicial than probative, and improper character evidence. Because he only raised the relevancy and prejudicial arguments at trial, he is prohibited from expanding those arguments on appeal.

As for the merits of those arguments, two victims actually testified that they were in the photographs. Additionally, a few of the boys testified that Simmons had taken pictures of them and had

---

[2] The State also argues that even if we find Simmons raised the character-evidence issue below, he never received a ruling on it. From our review of the record, when Simmons first objected to the books, the court summarily overruled the objection on all the grounds Simmons had given, which included inadmissible character evidence and more prejudicial than probative. Simmons then asked the court to reconsider, and Simmons again argued that the jury would be inflamed because of Simmons's gay lifestyle and that the books were unfairly prejudicial. The court then overruled the objection specifically because the probative value of the books was not outweighed by their prejudicial value. We are satisfied that the court's initial ruling on Simmons's objection preserved the issue.

showed them pornographic photographs on the computer. Therefore, as with the videos, these photographs corroborate the boys' testimony, and the trial court did not err in admitting the photographs into evidence.

While criminal charges were pending against Simmons, the parents of several of the boys initiated a civil lawsuit against Simmons. During this civil action, one of the victims, Derek Desanto, gave a videotaped deposition describing his interactions with Simmons. At the time of his deposition, Desanto had not yet been listed in the information as one of Simmons's victims. Although Simmons's attorney, who represented Simmons in the civil and criminal matters, had received notice of the deposition, he decided to allow an attorney for one of Simmons's co-defendants to depose Desanto on Simmons's behalf. Desanto committed suicide before Simmons's trial, and Simmons moved to bar the admission of Desanto's deposition on the basis that it was inadmissible hearsay and would violate his Sixth Amendment right to confront all witnesses. The trial court denied that request.

In his second allegation of error, Simmons contends that the trial court improperly admitted the deposition of a witness who had died prior to the trial and violated his constitutional right to confront all witnesses. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." Prior to the landmark United States Supreme Court case *Crawford v. Washington*, 541 U.S. 36 (2004), the Confrontation Clause did not bar the statement of an unavailable witness against a criminal defendant if the statement bore adequate "indicia of reliability," which could be inferred where the statement fell within a firmly rooted hearsay exception or contained particularized guarantees of trustworthiness. *See Ohio v. Roberts*, 448 U.S. 56 (1980). However, *Crawford* overruled previous precedent and established a new analysis, making clear that any hearsay permitted under the rules of evidence is also subject to the defendant's constitutional right of confrontation. 541 U.S. at 38. In *Crawford*, the Court held that, pursuant to the Sixth Amendment, no matter how "firmly rooted" an exception may be, if the statement is "testimonial," it is admissible only where the declarant is unavailable and the defendant had a prior opportunity to cross examine. *Id*. at 59. Although the Court declined to give a comprehensive definition of "testimonial," it gave several examples of the type of statements that would be included in such a definition, including prior testimony

at a preliminary hearing, testimony given before a grand jury or a former trial, and police interrogations. *Id.* at 68.

Rule 804(b)(1) of the Arkansas Rules of Evidence provides that former testimony or deposition testimony of an unavailable declarant can be offered at trial where the party against whom the testimony is now offered had an opportunity and similar motive to develop the testimony on direct, cross, or redirect. Section (a)(4) states that a witness is unavailable if that witness is unable to be present or testify because of death. Rule 32 of the Arkansas Rules of Civil Procedure specifically anticipates that deposition testimony may be used against or in place of a witness's live testimony at trial.

We hold that a deposition taken in anticipation of a future civil trial constitutes a "testimonial" statement as required by *Crawford*. Therefore, we must determine whether the declarant was unavailable and whether Simmons had a prior opportunity to cross examine that declarant. It is clear to us that Desanto, because he was deceased, was unavailable. Additionally, although Simmons's civil attorney chose not to cross examine Desanto during the deposition, criminal charges had been filed against Simmons, and his attorney had the opportunity to depose Desanto. The civil trial and the criminal trial involved the same facts and the same participants. The attorney for the co-defendant that cross examined Desanto had the same motive as Simmons — to discredit his testimony regarding the sexual encounters. Therefore, we find no error.

For his final point, Simmons argues that his sentence — forty years on five counts of rape and ten years on a count of producing, directing, or promoting a sexual performance, all to run consecutively — violates the Eighth Amendment's prohibition on cruel and unusual punishment. However, Simmons never made this argument to the trial court. It is our well-settled precedent that we will not consider an argument — even a constitutional one — that is raised for the first time on appeal. *See London v. State*, 354 Ark. 313, 125 S.W.3d 813 (2003). We note, however, that on the merits, his argument would fail. Our supreme court has held that a prison sentence, even to a term of life without possibility of parole, is not cruel and unusual punishment. *Rogers v. State*, 257 Ark. 144, 515 S.W.2d 79 (1974). Furthermore, an appellate court is not free to reduce a sentence — even one it feels is unduly harsh — as long as the sentence is within the range of punishment

contemplated by the legislature. *Bunch v. State*, 344 Ark. 730, 43 S.W.3d 132 (2001). Arkansas Code Annotated § 5-4-401(a)(1) (Repl. 1997) authorizes a sentence of ten to forty years or life in prison for a class Y felony, which rape is considered to be. Additionally, Ark. Code Ann. § 5-4-403(a) (Repl. 1997) allows a court to impose consecutive sentences for multiple convictions. Therefore, under *Bunch*, Simmons's sentence was not unduly harsh.

Affirmed.

GLADWIN and CRABTREE, JJ., agree.