*This opinion is subject to revision before final publication in the Pacific Reporter*

**2017 UT 61**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Respondent,*

*v.*

DESEAN MICHAEL GOINS,
*Petitioner.*

No. 20160485
Filed September 6, 2017

On Certiorari to the Utah Court of Appeals

Third District, Salt Lake
The Honorable Ann Boyden
No. 131906358

Attorneys:

Sean D. Reyes, Att'y Gen., Kris C. Leonard, Asst. Solic. Gen.,
Salt Lake City, for respondent

Herschel Bullen, Salt Lake City, for petitioner

JUSTICE PEARCE authored the opinion of the Court in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE DURHAM and JUSTICE HIMONAS joined.

JUSTICE PEARCE, opinion of the Court:

### INTRODUCTION

¶1 Petitioner DeSean Goins challenges the court of appeals' decision upholding the district court's admission at trial of the preliminary hearing testimony of an unavailable witness. Specifically, Goins argues that the court of appeals erroneously concluded the unavailable witness's testimony was properly admitted under rule 804 of the Utah Rules of Evidence. Goins contends that because article I, section 12 of the Utah Constitution limits preliminary hearings to establishing probable cause, his counsel did not have a similar motive to develop testimony at the

preliminary hearing that she would have had at trial. We agree with Goins and hold that the court of appeals erred when it affirmed the admission of the witness's preliminary hearing testimony. To reach that conclusion, we disavow our holding in *State v. Brooks* that counsel always has the same motive to develop testimony at a preliminary hearing that she will have at trial.

¶2 Admission of preliminary hearing testimony constituted error with respect to Goins's misdemeanor conviction. But its admission was harmless as to Goins's felony conviction. We therefore affirm his felony conviction, reverse his misdemeanor conviction, and remand.

## BACKGROUND[1]

¶3 In July 2012, Goins was a man on a mission: to find Gabriel Estrada and recover the cell phone Goins believed Estrada had stolen from him. Goins found Estrada outside a Salt Lake City homeless shelter. Goins brandished a knife and confronted Estrada. Estrada denied that he had taken Goins's phone and fled.

¶4 Goins resumed his search for his phone in Pioneer Park. He found Jacob Omar, an Estrada associate, asleep on a blanket. Goins and his girlfriend, Star, awakened Omar. Star asked Omar if he had seen Estrada and, more specifically, if Omar had seen Estrada with a phone. Both Star and Goins began accusing Estrada of stealing Goins's cell phone.

¶5 During this conversation, Goins began waving the knife at Omar and telling Omar that he "better tell the truth because [Goins] knows that it was [Estrada] that took the phone from [Goins's] apartment." At some point, Goins stepped onto Omar's blanket. Omar testified, "I don't allow anybody to step onto my blanket. So I got up and I pushed him off my blankets."

¶6 Goins "came back at" Omar, and the two men "started punching each other." Omar pinned Goins to the ground. Goins

---

[1] "'On appeal, we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly.' We present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Holgate*, 2000 UT 74, ¶ 2, 10 P.3d 346 (citation omitted).

latched onto Omar's earlobe with his teeth, yanked his head back, bit off Omar's earlobe, and spat it on the ground. Both men got up and Omar began chasing Goins around his blanket. At some point, Goins picked up his knife, and when Omar and Goins were on opposite sides of the blanket, Goins lunged and stabbed Omar under his left arm. Police officers soon arrived and arrested Goins. Goins was eventually charged with one count of mayhem, a second-degree felony in violation of Utah Code section 76-5-105, and two counts of aggravated assault, both third-degree felonies in violation of Utah Code section 76-5-103.[2]

¶7   Both Estrada and Omar testified at a preliminary hearing. Goins's counsel cross-examined Estrada without objection by the State or apparent restriction by the judge.

¶8   Two months after the preliminary hearing, the parties appeared for the first day of trial only to discover that they had no jury pool and could not proceed that day. The parties and the trial court agreed to continue the trial to the following day. The prosecutor then reported that Estrada had not appeared for trial and moved that he be declared unavailable and that his preliminary hearing testimony be admitted and read to the jury.

¶9   The prosecutor explained that he had difficulty locating both Estrada and Omar and that the prosecution "ha[d] gone to some lengths to try to procure [Estrada's] attendance" at trial. The prosecution found Omar and Estrada for the pretrial hearing through the Salt Lake City Bike Police, who "were able to find them mostly based on Jacob Omar's . . . missing earlobe." Estrada and Omar had brought their pastor, Russ,[3] to the preliminary hearing. At the hearing, Estrada and Omar agreed to allow the prosecutor to "go through Russ to contact them" with details regarding the trial.

¶10   In anticipation of trial, the prosecutor emailed Russ a subpoena for Estrada and Omar, which detailed the trial date and

---

[2] Some of the statutes cited in this opinion, including Utah Code section 76-5-103, have been amended since July 2013, when the incidents at issue occurred. Because the amendments do not affect our analysis, and for ease of reference, we cite the most recent version of the statutes.

[3] Pastor Russ's surname does not appear in the record before us.

called for their presence at trial. Russ confirmed that he gave a copy of the subpoena to both Estrada and Omar. Sometime before trial, Russ left his position for a new job, and Jason[4] became the new community pastor.

¶11   Both Russ and Jason informed the prosecutor that "Estrada ha[d] come into some trouble" and "was in jail at one point." The prosecutor told the district court that he had checked the jail about a week before the October 23, 2013 trial. However, Estrada had been released almost a month prior, on September 24.

¶12   Jason lost touch with Estrada before trial. Although the prosecutor asked Jason to watch for Estrada, Jason did not see him in the days leading up to trial.

¶13   Goins accepted the prosecutor's proffer of his efforts to serve Estrada and procure his appearance at trial. Goins argued that the prosecutor's efforts to serve Estrada were insufficient under rule 804 of the Utah Rules of Evidence, which allows for the admission of former testimony when a witness is unavailable. Goins also argued that permitting use of Estrada's preliminary hearing testimony would violate Goins's constitutional right to confrontation because the motive for cross-examination at the preliminary hearing differed from the motivation to cross-examine at trial.

¶14   The district court found that Estrada was unavailable under rule 804. Specifically, the court found that the State utilized a "reasonable means of process" as its efforts succeeded in actually informing Estrada of the trial dates. Estrada appeared at the preliminary hearing and knew that the proceedings were moving forward. Next, the court found that Goins enjoyed a meaningful opportunity for cross-examination at the preliminary hearing where his counsel actively examined Estrada without objection or restriction and asked about the "exact incidents" that were at issue at trial. The district court concluded that Estrada's preliminary hearing testimony could be used at trial without violating Goins's Confrontation Clause rights.

¶15   Estrada failed to appear again at trial the next day. Goins unsuccessfully renewed his objection to admission of Estrada's

_____

[4] The record does not include Pastor Jason's cognomen either.

preliminary hearing testimony, and the jury heard an audio tape of Estrada's preliminary hearing testimony relating Goins's encounter with Estrada.

¶16 The prosecution presented separate evidence relating to Goins's altercation with Omar. The jury heard from three witnesses: Omar, an eyewitness, and a responding police officer. The prosecution also presented photos depicting Goins's and Omar's injuries.

¶17 The jury acquitted Goins of the mayhem charge. It returned a guilty verdict for the count of felony aggravated assault for the stabbing of Omar. The jury convicted Goins of the lesser offense of threatening with or using a dangerous weapon, a class A misdemeanor, in the fight with Estrada.

¶18 Goins appealed to the court of appeals on two grounds. First, Goins argued that Estrada was not "unavailable" because the State made no good-faith effort to locate him and properly serve him with a subpoena. Second, Goins asserted that he did not have the requisite opportunity or similar motive to fully cross-examine Estrada at the preliminary hearing.

¶19 The court of appeals held that the State made the necessary reasonable efforts to locate Estrada and affirmed the finding of unavailability.[5] *State v. Goins*, 2016 UT App 57, ¶ 15, 370 P.3d 942. The court also held that the circumstances of a preliminary hearing "closely approximat[e] those" of a typical trial. *Id.* ¶ 16 (alteration in original) (citation omitted). The court of appeals held that the rule required the opportunity for cross-examination, not the exercise of

---

[5] The court of appeals noted that "Judge James Z. Davis began his work on this case as a member of the Utah Court of Appeals. He retired from the court, but thereafter became a Senior Judge. He completed his work on this case sitting by special assignment as authorized by law," but passed away before the decision issued. *State v. Goins*, 2016 UT App 57, n.1, 370 P.3d 942. The court of appeals opined that Judge Davis was "an esteemed colleague and a good friend" and that his "wit, wisdom, and dedication will be sorely missed." *Id.* We wholeheartedly agree. Jim was a great judge and an even better person. His influence on the court of appeals, and the court system generally—he served three terms on the Judicial Council—will be remembered very fondly.

that opportunity, and that a preliminary hearing provides "an effective opportunity for confrontation." *Id.* ¶¶ 16–17 (citation omitted). The court of appeals accordingly held that Goins enjoyed an adequate opportunity for cross-examination at the preliminary hearing. *Id.* ¶ 18.

¶20 The court of appeals sympathized with Goins's claim that the limited purpose of the preliminary hearing—determination of probable cause—meant that trial counsel had a different motive in conducting cross-examination at a preliminary hearing than she would have at trial. *Id.* ¶ 19. However, the court found the argument foreclosed by our decision in *State v. Brooks*, 638 P.2d 537 (Utah 1981). *Goins*, 2016 UT App 57, ¶ 19. The court of appeals ultimately affirmed the district court's admission of Estrada's preliminary hearing testimony. *Id.* ¶ 20.

¶21 Goins filed a petition for rehearing under rule 35 of the Utah Rules of Appellate Procedure in which he raised new claims of ineffective assistance of trial and appellate counsel. The court of appeals requested additional briefing from the parties regarding the propriety of raising new issues in a petition for rehearing. The court then denied the petition without comment.

## ISSUES AND STANDARD OF REVIEW

¶22 On certiorari, Goins argues that the court of appeals erred when it affirmed the admission at trial of Estrada's preliminary hearing testimony. This court reviews the court of appeals' decision on certiorari for correctness. *State v. Levin*, 2006 UT 50, ¶ 15, 144 P.3d 1096.

¶23 Next, Goins argues that the court of appeals erred when it failed to address his ineffective assistance of counsel claims raised for the first time in his rule 35 petition for rehearing. We review the court of appeals' decision not to address a question raised for the first time in a petition for rehearing for correctness. *See Arbogast Family Tr. v. River Crossings, LLC*, 2010 UT 40, ¶ 10, 238 P.3d 1035 ("The interpretation of a rule of procedure is a question of law that we review for correctness." (citation omitted)).

**ANALYSIS**

### I. Goins's Counsel Did Not Have a Similar Motive to Develop Estrada's Testimony at the Preliminary Hearing That She Would Have Had at Trial

¶24 Goins argues that the court of appeals erred when it affirmed that Estrada's preliminary hearing testimony could be admitted at trial. He asserts that the introduction of preliminary hearing testimony violates both the Confrontation Clause of the United States Constitution and rule 804 of the Utah Rules of Evidence. Goins intertwines his constitutional and rule-based arguments. We see value in detangling the arguments and analyzing rule 804 separately from the Confrontation Clause. We have reasoned that judicial restraint counsels against reaching constitutional questions if we can resolve the case on non-constitutional grounds. *State v. Thurman*, 846 P.2d 1256, 1262 (Utah 1993). Focusing first on Rule of Evidence 804 permits us to leave the constitutional question for another day.

¶25 Hearsay is inadmissible at trial unless it falls within an exception.[6] Utah R. Evid. 802. Utah Rule of Evidence 804 provides an exception: preliminary hearing testimony may be admitted if (1) the potential witness is unavailable and (2) the testimony is given at a proceeding where the party against whom the testimony is now offered had "an opportunity and similar motive to develop it." *Id.* 804(b)(1).

¶26 Goins challenges the court of appeals' holdings that (1) Estrada qualified as an unavailable witness and (2) Goins had an opportunity and similar motive to develop the testimony at the pretrial hearing under rule 804.

### *A. We Assume Without Deciding That Estrada Was Unavailable to Testify at Trial*

¶27 The rule 804 exception extends only to circumstances in which the declarant is considered unavailable. "A declarant is considered to be unavailable as a witness if the declarant . . . is

---

[6] A statement is hearsay if (1) the witness made the statement outside of the current trial or hearing and (2) a party offers the statement "to prove the truth of the matter asserted in the statement." Utah R. Evid. 801(c).

absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure the declarant's attendance." UTAH R. EVID. 804(a)(5).

¶28 The court of appeals reasoned that "[b]ecause the prosecution made reasonable efforts to locate [Estrada], though perhaps not all efforts 'humanly possible,' . . . the prosecution acted in good faith, and . . . the trial court did not abuse its discretion in finding [Estrada] to be unavailable for purposes of rule 804." *State v. Goins*, 2016 UT App 57, ¶ 15, 370 P.3d 942. We assume without deciding that Estrada was unavailable to testify at trial because we decide this case on other grounds.[7]

---

[7] Although we do not need to address the substance of Goins's argument, we note two lingering issues in our unavailability jurisprudence. First, we have not been consistent in our articulation of the test the district court should apply to gauge whether a witness is unavailable for Confrontation Clause purposes. The court of appeals referenced language we used in *State v. Menzies,* where we said that it must be "practically impossible to produce the witness in court." *See Goins*, 2016 UT App 57, ¶ 9 (quoting *State v. Menzies*, 889 P.2d 393, 402 (Utah 1994)). In *State v. Montoya*, we cited that language from *Menzies* but then concluded that "in general, a witness will not be found unavailable until the proponent of the evidence demonstrates that he has used all reasonable means at his disposal to secure the attendance of the witness." 2004 UT 5, ¶ 16, 84 P.3d 1183. One could read *Montoya* as equating "practically impossible" with "all reasonable means." Those concepts are plainly different however. We recognize, though, that the United States Supreme Court is the ultimate authority on establishing a standard for unavailability and has held that "a witness is not 'unavailable' for purposes of the . . . confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." *Hardy v. Cross*, 565 U.S. 65, 69 (2011) (alteration in original) (citation omitted). Second, there may be a difference between unavailability for Confrontation Clause purposes and unavailability under rule 804(a)(5). Utah Rule of Evidence 804(a)(5) requires that for a declarant to be considered unavailable, "the statement's proponent has not been able, by process or other reasonable means, to procure the declarant's attendance." We have

(continued . . .)

*B. Rule 804 Precludes the Admission of Preliminary
Hearing Testimony at Trial as a Matter of Law*

¶29 Prior testimony of an unavailable witness may be admitted only if it meets Utah Rule of Evidence 804(b). Under rule 804(b)(1), former testimony of an unavailable witness is "not excluded by the rule against hearsay" if it

> (A) was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one; and

> (B) is now offered against a party who had . . . an *opportunity and similar motive* to develop it by direct, cross-, or redirect examination.

UTAH R. EVID. 804(b)(1) (emphasis added). Thus, preliminary hearing testimony is admissible against a defendant only if defense counsel had both (1) an opportunity and (2) similar motive to develop the testimony at the preliminary hearing.

¶30 Goins argues that the limited nature of preliminary hearings results in a more limited opportunity for cross-examination than would take place at trial and that therefore the motive to cross-examine at a preliminary hearing differs from that at trial. The State counters that Goins's argument was raised and rejected in *State v. Brooks*, 638 P.2d 537 (Utah 1981). The State has a point. The *Brooks* court rejected a defendant's assertions that a preliminary hearing is "by its very nature . . . different in motive and interest than a trial." *Id.* at 541. Instead, it held that "cross-examination takes place at preliminary hearing and at trial under the same motive and interest." *Id.* To reach that conclusion, the *Brooks* court opined that "[d]efense counsel's motive and interest are the same in either setting; he acts in both situations in the interest of and motivated by establishing the innocence of his client." *Id.* We concluded that the rules of evidence do "not preclude, as a matter of law, testimony

---

(continued . . .)

not had the opportunity to address the standard for unavailability under rule 804(a)(5) or to opine on whether rule 804 propounds a different standard than the test for Confrontation Clause purposes.

given in a preliminary hearing from being admitted at trial."[8] *Id.* The State correctly asserts that *Brooks* announced a per se rule under which preliminary hearing testimony is admissible so long as the requirements of unavailability and an opportunity to cross-examine are satisfied.

¶31   However, subsequent changes to article I, section 12 of the Utah Constitution undermine one of *Brooks*'s key premises—that "[d]efense counsel's motive and interest are the same in either setting." *See id.* In 1994—more than a decade after we decided *Brooks*—Utah voters amended article I, section 12 to limit "the function of [preliminary] examination . . . to determining whether probable cause exists."[9] UTAH CONST art. I, § 12.

¶32  Since 1994, preliminary hearings—at least those that function as the amended constitution envisions—potentially limit the scope of cross-examination such that the blanket statement we issued in *Brooks* no longer rings true. As Goins's trial counsel argued to the trial court:

> the motive in developing testimony is different at a preliminary hearing than it is at trial. We frequently ask questions during preliminary hearings that we would not ask at trial because evidence . . . admissible at . . . a preliminary hearing [is not necessarily] admissible in a trial. The rules of evidence are different and . . . we don't ask question[s] that we might ask at a trial because credibility determinations are not being

---

[8] *Brooks* discusses Utah Rule of Evidence 63(3), the predecessor of rule 804.

[9] The changes to article I, section 12 accompanied the ratification of article I, section 28 of the Utah Constitution as part of the Victims' Rights Amendment to the Utah Constitution. Constitutional Declaration of the Rights of Crime Victims, 1994 Utah Laws, 1610, 1610–11. The stated purpose of article I, section 28 is "[t]o preserve and protect victims' rights to justice and due process." UTAH CONST. art. I, § 28. To protect victims from lengthy preliminary hearings, the joint resolution "amend[ed] the rights of accused persons to limit the function and procedures of preliminary examinations." 1994 Utah Laws 1610–11.

made [at] a preliminary hearing. The court making the probable cause determination is not assessing the credibility of a witness, therefore we do not ask questions to get that information out.

¶33 This statement perhaps slightly exaggerates the differences—magistrates can, in some limited ways, assess credibility at a preliminary hearing. *See, e.g., State v. Virgin,* 2006 UT 29, ¶ 25, 137 P.3d 787. And there may be certain circumstances where the nature of a witness and her testimony is such that defense counsel will ask all the questions at a preliminary hearing that she would ask at trial. But by and large, article I, section 12 places most credibility determinations outside the reach of a magistrate at a preliminary hearing, so Goins's trial counsel's basic point is well taken.

¶34 A defense attorney who assumes that the magistrate will conduct a preliminary hearing that comports with article I, section 12 does not have an incentive to prepare to thoroughly cross-examine on credibility. An attorney who believes that the magistrate will not permit questioning that goes beyond that necessary to establish probable cause has no guarantee that she can present or develop positive information concerning her client at the preliminary hearing. Nor does counsel have a motive to develop affirmative defenses at a preliminary hearing. In many, if not most, instances, *Brooks*'s conclusion either no longer aligns with the reality of practice, or places magistrates in the uncomfortable position of choosing between conducting preliminary hearings in fidelity with article I, section 12 and permitting the type of examinations that *Brooks* presupposes.

¶35 Goins asks us to not only disavow our holding in *Brooks*, but to replace it with another blanket rule—one that provides that counsel never has the same motive to develop testimony at a preliminary hearing as at trial. The Colorado Supreme Court adopted this approach in *People v. Fry*, 92 P.3d 970 (Colo. 2004).[10] *Fry*

_____

[10] *Fry* analyzed whether cross-examination at a preliminary hearing satisfies the Confrontation Clause's requirement that a party have an opportunity to cross-examine. *People v. Fry*, 92 P.3d 970, 974–76 (Colo. 2004) (en banc); *see Crawford v. Washington*, 541 U.S. 36 (2004). The Colorado Supreme Court explicitly stated that its holding

(continued . . .)

reasoned that preliminary hearings' limited purpose curtailed the rights of a defendant "to cross-examine witnesses and to introduce evidence." *Id.* at 977. The *Fry* court opined that a defendant's confrontation rights are limited at a preliminary hearing because judges are prohibited from engaging in credibility determinations in most preliminary hearings and, as a practical matter, defense counsel may decline to cross-examine witnesses at a preliminary hearing. *Id.* "Because credibility is not at issue and probable cause is a low standard, once a prima facie case for probable cause is established, there is little defense counsel can do to show that probable cause does not exist." *Id.* When even the most searching cross-examination will likely still result in a probable cause finding, "defense counsel may decline to cross-examine witnesses at the preliminary hearing, understanding that the cross-examination would have no bearing on the issue of probable cause and that the judge may limit or prohibit the cross-examination." *Id.*

¶36   *Fry*'s bright-line rule has some appeal. Clear rules provide better guidance. But they provide guidance at the cost of flexibility. That lack of flexibility could foreclose the potential for preliminary hearing testimony to be used in those circumstances where the nature of the case, or the testimony of the unavailable witness, is such that defense counsel really did possess the same motive and was permitted a full opportunity for cross-examination at the preliminary hearing. Although such cases might prove rare, we can envision scenarios where, for whatever reason, defense counsel possesses the same motive and is provided the same opportunity to cross-examine as she would have at trial. In such a case, the policy behind a bright-line rule should bend to permit the admission of the preliminary hearing testimony that would violate neither the rules of evidence nor the defendant's constitutional rights.

¶37 Many courts have reached the same conclusion and eschewed a blanket rule in favor of a case-by-case examination. For example, the Supreme Court of Wyoming reasoned that "[t]here will undoubtedly be cases in which preliminary hearing testimony should not be admitted at trial because the defense attorney did not

(continued . . .)

"do[es] not delve into whether the preliminary hearing testimony would be admissible under a hearsay exception." *Fry*, 92 P.3d at 978.

have a similar motive to cross-examine the witness at the preliminary hearing but has a compelling motive to undertake that cross-examination at trial." *Rodriguez v. State*, 711 P.2d 410, 414 (Wyo. 1985). But *Rodriguez* recognized that "[t]here will also be cases, . . . in which the defense attorney has a motive at the preliminary hearing to cross-examine the witness which is similar to his motive to cross-examine at trial." *Id.* Other courts have similarly adopted a case-by-case approach. *See, e.g., State. v. Ricks*, 840 P.2d 400, 406–07 (Idaho Ct. App. 1992) (adopting a case-by-case rule).

¶38 The State points out that both the United States Supreme Court and this court have repeatedly held that preliminary hearing testimony of an unavailable witness may be admissible at trial. The State discusses *California v. Green*, in which the United States Supreme Court upheld the admission of preliminary hearing testimony under the Confrontation Clause. 399 U.S. 149, 165 (1970). In *Green*, officers arrested a minor named Porter for selling marijuana to an undercover officer. *Id.* at 151. Porter identified Green as his supplier. *Id.* Porter testified for the State at Green's preliminary hearing and his "story at the preliminary hearing was subjected to extensive cross-examination by [defense] counsel." *Id.* Porter testified again at trial but became "markedly evasive and uncooperative," claiming that he was uncertain how he obtained the marijuana. *Id.* at 151–52 (citation omitted). The California Supreme Court held that admitting Porter's preliminary hearing testimony violated Green's confrontation rights. *Id.* at 153.

¶39 The United States Supreme Court reversed. The Court reasoned that "Porter's preliminary hearing testimony was admissible" under the Confrontation Clause, even if Porter had not testified at trial, because his preliminary hearing statement was "given under circumstances closely approximating those that surround the typical trial." *Id.* at 165. The State highlights that the Court found circumstances at the preliminary hearing "closely approximat[ed]" those at trial because "Porter was under oath; [Green] was represented by counsel . . . ; [Green] had every opportunity to cross-examine Porter as to his statement; and the proceedings were conducted before a judicial tribunal, equipped to provide a judicial record of the hearings." *Id.* Under these circumstances, the hearing did not "significantly differ[] from an actual trial" for confrontation purposes, and the preliminary hearing testimony would have been admissible even if Porter had been unavailable to testify at trial. *Id.*

¶40   The State argues that the United States Supreme Court's subsequent holdings continue to support the decision in *Green* to admit preliminary hearing testimony. The Court held again in *Ohio v. Roberts* that the preliminary hearing afforded an "adequate opportunity to cross-examine." 448 U.S. 56, 73 (1980) (citation omitted), *abrogated by Crawford v. Washington*, 541 U.S. 36 (2004). The Court adopted a test under which hearsay statements of an unavailable declarant were admissible under the Confrontation Clause so long as they bore an "adequate 'indicia of reliability.'" *Id.* at 66 (citation omitted). The Court in *Crawford v. Washington* abandoned the *Roberts* test and determined that "preliminary hearing testimony is admissible only if the defendant had an adequate opportunity to cross-examine." 541 U.S. at 57. The State also cites *United States v. Owens* to assert that the "adequate opportunity to cross-examine" guarantees only "an *opportunity* for effective cross-examination, not cross-examination that is effective." 484 U.S. 554, 557, 559 (1988) (citation omitted).

¶41   And we agree with the State's reading of those cases. Those cases, however, fail to completely reach the questions presented here for two reasons. First, those cases examined admissibility under the Confrontation Clause, not Rule of Evidence 804. *See, e.g.*, *Roberts*, 448 U.S. at 64–65 (recognizing that "every jurisdiction has a strong interest in . . . the development and precise formulation of the rules of evidence applicable in criminal proceedings," and "[t]he Court has not sought to 'map out a theory of the Confrontation Clause that would determine the validity of all . . . hearsay "exceptions."'" (third alteration in original) (citation omitted)); *Crawford*, 541 U.S. at 68 (holding that the Sixth Amendment generally requires of state-developed hearsay law "unavailability and a prior opportunity for cross-examination"); *Owens*, 484 U.S. at 564 (holding that a prior, out-of-court identification statement of a witness did not violate either the Confrontation Clause or Federal Rule of Evidence 802). Both the Federal and Utah Rules of Evidence require not only the opportunity for cross-examination but also a similar motive to develop the testimony. FED. R. EVID. 804(b)(1)(B); UTAH R. EVID. 804(b)(1)(B). Second, none of the State's cases speak to the preliminary hearing limitations that article I, section 12 of the Utah Constitution imposes. Our constitution specifically limits the purpose of preliminary hearings in a manner that can undercut defense counsel's opportunity to cross-examine witnesses at a

preliminary hearing and thereby modify the interest counsel has in developing testimony on cross-examination.

¶42   And those limitations diminish the utility of the cases the State relies upon. For example, the Court in *Green* admitted preliminary hearing testimony because the witness gave that testimony "under circumstances closely approximating those that surround the typical trial." *Green*, 399 U.S. at 165. Article I, section 12 of the Utah Constitution prevents us from concluding that every preliminary hearing conducted in Utah will occur "under circumstances closely approximating those that surround the typical trial." *Id.*; *see supra* ¶¶ 31–34. Indeed, as referenced above, it appears that the vast majority of preliminary hearings will not.

¶43   The State turns our attention to other states that "have similarly held preliminary hearing testimony of an unavailable witness admissible under the confrontation clause." *See Simmons v. State*, 234 S.W.3d 321, 326 (Ark. Ct. App. 2006);[11] *People v. Williams*, 181 P.3d 1035, 1061 (Cal. 2008); *State v. Vinhaca*, No. 28571, 2009 WL 1144934, at *2 (Haw. Ct. App. May 22, 2009); *State v. Young*, 87 P.3d 308, 316–17 (Kan. 2004); *People v. Yost*, 749 N.W.2d 753, 774–75 (Mich. Ct. App. 2008); *State v. Aaron*, 218 S.W.3d 501, 517 (Mo. Ct. App. 2007);[12] *Chavez v. State*, 213 P.3d 476, 482–84 (Nev. 2009); *State v.*

---

[11] We note that *Simmons* involved deposition testimony and not preliminary hearing testimony. 234 S.W.3d at 326.

[12] The Missouri Court of Appeals observed that "it is difficult to find that [the defendant] had 'the same interest and motive in his cross-examination'" since "the issue at the preliminary hearing was whether probable cause existed . . . whereas the issue at trial was whether [the defendant] was guilty of the charged crimes beyond a reasonable doubt." *Aaron*, 218 S.W.3d at 513, 516 (citation omitted). The court acknowledged that under Missouri law, the test for whether former testimony by an unavailable declarant is admissible is whether "the party against whom prior testimony is now offered had, at the time the testimony was originally given, 'the same interest and motive in his cross-examination.'" *Id.* at 512 (citation omitted). *Aaron* contemplated, as we do now, that state law might preclude the admission of preliminary hearing testimony in cases such as the one before us. However, the court reasoned that despite the difference in interests at preliminary hearings and at trial,

(continued . . .)

*Henderson*, 136 P.3d 1005, 1010–11 (N.M. Ct. App. 2006); *Primeaux v. State*, 88 P.3d 893, 905–06 (Okla. Crim. App. 2004). As the State acknowledges, each of these cases determined the admissibility of preliminary hearing testimony under the Confrontation Clause, not under evidentiary rules.

¶44 The State also presents examples where this court affirmed the admission of preliminary hearing testimony at trial where a witness was unavailable. *See Mackin v. State*, 2016 UT 47, ¶¶ 38–42, 387 P.3d 986; *State v. Menzies*, 889 P.2d 393, 402–03 (Utah 1994); *State v. Lovell*, 758 P.2d 909, 913–14 (Utah 1988); *Brooks*, 638 P.2d 537 (Utah 1981). We decided *Menzies*, *Lovell*, and *Brooks* before article I, section 12 constitutionally limited the purpose of preliminary hearings in 1995. In *Mackin*, we did not revisit *Brooks* based on the 1995

---

(continued . . .)

"*Crawford* purports to close the door on analysis of 'firmly rooted hearsay exceptions' by eliminating the 'indicia of reliability' test articulated in *Roberts*." *Id.* at 517 (citation omitted).

We disagree with *Aaron*'s use of *Crawford* to effectively read the words "similar motive" out of the rules of evidence. *Crawford* disposed of the "indicia of reliability" test, which "says that an unavailable witness's out-of-court statement may be admitted so long as it has adequate indicia of reliability—*i.e.*, falls within a 'firmly rooted hearsay exception' or bears 'particularized guarantees of trustworthiness.'" *Crawford*, 541 U.S. at 42 (citation omitted). *Aaron* reads *Crawford* to prohibit "the odd possibility that a criminal defendant's confrontation rights may be more closely protected in [states] by the law of evidence than by the specific command of the Sixth Amendment." 218 S.W.3d at 516. But in disposing of the "indicia of reliability" test, *Crawford* did not impose an affirmative duty on courts to admit all testimonial evidence that did not run afoul of the Sixth Amendment. Rather, *Crawford* clarified the test to be used to determine what prior testimony would violate the Sixth Amendment if admitted. "Where testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Crawford*, 541 U.S. at 68. *Crawford* does not, as *Aaron* might be read to suggest, prohibit states from developing a rule of evidence with a more exacting test for admissibility.

constitutional amendment because neither party asked us to do so. 2016 UT 47; *see State v. Houston*, 2015 UT 40, ¶ 65, 353 P.3d 55 ("As a general rule, we decline to rule or opine on issues that are not briefed by the parties."). Unlike the defendant in *Mackin*, Goins places the issue squarely before us and challenges *Brooks'*s viability.

¶45　Finally, the State contends that Goins offers no compelling reason to depart from our precedent. The State correctly argues that "we do not overrule our precedents 'lightly.'" *Eldridge v. Johndrow*, 2015 UT 21, ¶ 21, 345 P.3d 553 (citation omitted). However, this case does not present the situation we confronted in *Eldridge*—that is, a party asking us to depart from *stare decisis* principles because it believes our precedent should be revisited. Rather, Goins asks us to recognize that a change in law has undercut the value of our precedent. In such a case, we are not being asked to weigh the benefits of adherence to *stare decisis* against the proposed reconsideration of our precedent. "We have long recognized the axiom 'that our precedent must yield when it conflicts with a validly enacted statute.'" *In re Estate of Hannifin*, 2013 UT 46, ¶ 10, 311 P.3d 1016 (citation omitted). Here, *Brooks* was not abrogated by statute but by a constitutional amendment supported by 69 percent of Utah voters. *State of Utah General Election 1994*, ELECTIONS.UTAH.GOV 10 (Nov. 29, 1994), https://elections.utah.gov/Media/Default/Docume nts/Election_Results/General/1994Gen.pdf. *Brooks'*s statement that the same motive exists to develop testimony at a preliminary hearing and at trial is simply not correct in light of the constitutional amendment.

¶46　And it is apparent on the record before us that Goins's counsel did not possess the same motive to develop testimony at the preliminary hearing that she would have had at trial. Estrada's testimony referenced concerns with Goins and a prior incident between Goins and Estrada. Goins's trial counsel had a motive to develop this testimony and question Estrada's credibility that went beyond a preliminary hearing's constitutionally limited purpose. Without *Brooks'*s per se rule, we have no basis to conclude that Goins's counsel's preliminary hearing motive to cross-examine was similar to what would have existed at trial.

¶47　The court of appeals erred when it affirmed the admissibility of Estrada's preliminary hearing testimony.

## II. Admission of Estrada's Preliminary Hearing Testimony Constituted Harmless Error as to Goins's Felony Conviction

¶48 An "error warrants reversal only if . . . . a reasonable likelihood exists that absent the error, the result would have been more favorable to the defendant." *State v. Dibello*, 780 P.2d 1221, 1230 (Utah 1989).

¶49 The jury convicted Goins on two counts: a class A misdemeanor for threatening Estrada with a knife and aggravated assault, a third-degree felony, for his encounter with Omar. The State contends that any error would be prejudicial only as to Goins's class A misdemeanor against Estrada. However, the State argues, Estrada's testimony "had little, if any, impact on the conviction for assaulting Omar." We agree.

¶50 The admission of Estrada's preliminary hearing testimony was prejudicial only as to Goins's misdemeanor conviction. Estrada's testimony was the primary evidence admitted in support of Goins's misdemeanor charge. Because of that, we can readily conclude that "a reasonable likelihood exists that absent the error," Goins would have received a more favorable outcome. *Id.*

¶51 Admission of Estrada's testimony constituted harmless error concerning Goins's felony conviction for three reasons. First, Estrada did not witness Goins's confrontation with Omar, nor did he testify regarding Omar's assault. Second, an eyewitness, who watched almost the entirety of the altercation, independently corroborated Omar's testimony. And finally, the prosecution presented corroborating photographs depicting Omar's and Goins's injuries.

¶52 Given that Estrada's improperly admitted preliminary hearing testimony had little, if anything, to do with Goins's assault on Omar, the admission of that testimony did not impact the felony aggravated assault conviction.

### III. The Court of Appeals Did Not Err When It Refused to Address Goins's Petition for Rehearing

¶53 Goins argues that the court of appeals erred when it denied his petition for rehearing. Utah Rule of Appellate Procedure 35 permits parties to petition for rehearing "in cases in which the court has issued an opinion, memorandum decision, or per curiam decision." UTAH R. APP. P. 35(a). Rule 35 requires that a petition for

rehearing "state with particularity the points of law or fact which the petitioner claims the court has overlooked or misapprehended." *Id.* 35(c). Goins's petition for rehearing gives the word "overlook" a novel interpretation. Goins contends that the failure of his original appellate counsel to raise certain ineffective assistance claims caused the court of appeals to "overlook" those claims.

¶54   Appellate courts should not consider claims that are presented for the first time in petitions for rehearing. The plain language of the rule provides only for presentation of "points of law or fact" the court may have overlooked when it considered the issues before it. *Id.* Rule 35 does not allow a party "to present to this court a new theory or contention which was neither in the record as it was before this court nor in the arguments made." *Lockhart Co. v. Anderson*, 646 P.2d 678, 681 (Utah 1982) (citation omitted); *see Berg v. Otis Elevator Co.*, 231 P. 832, 837–38 (Utah 1924) (refusing to consider a new argument presented in a petition for rehearing); *Swanson v. Sims*, 170 P. 774, 778 (Utah 1918) (same). In other words, the court of appeals did not overlook or misapprehend "points of law or fact" that were never presented to it. *See* UTAH R. APP. P. 35(c).

¶55   Goins argues that judicial economy would have been better served if the court of appeals addressed his ineffective assistance claim rather than "requir[ing] him to raise it later in a postconviction proceeding." *State v. Humphries*, 818 P.2d 1027, 1029 (Utah 1991), *abrogated on other grounds by State v. Litherland*, 2000 UT 76, 12 P.3d 92. Goins also notes that in *Humphries,* we permitted a party to raise a claim of ineffective assistance of counsel on a petition for certiorari. And, indeed, we did note that the case presented "peculiar, narrow circumstances" and that we would promote judicial economy if we decided the issue and did not require the petitioner to press the claim in a postconviction action. *Id.* In *Humphries,* however, the State conceded the existence of reversible error. *Id.* Not so here. And, as such, the peculiar circumstances that motivated us to depart from the normal course of action in *Humphries* are not present.

¶56   The court of appeals did not err when it refused to address a new claim raised for the first time in a rehearing petition.

## CONCLUSION

¶57   Contrary to what we said in *State v. Brooks,* not every cross-examination at a preliminary hearing will be conducted with a similar motive as if the cross-examination occurred at trial. We disavow the holding in *Brooks* in light of subsequent changes to the

Utah Constitution and clarify that a district court should examine the preliminary hearing testimony to ensure that the defendant possessed a similar motive before admitting the testimony under Utah Rule of Evidence 804. The court of appeals erred when it affirmed the admission of Estrada's preliminary hearing testimony at trial. We also hold that this error is prejudicial only as to Goins's misdemeanor conviction.

¶58 We affirm Goins's third-degree aggravated assault conviction, reverse his misdemeanor conviction, and remand for further proceedings consistent with this opinion.

———————