**2022 UT 34**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

DEVIN RANDOLPH,
*Appellant*,

*v.*

STATE OF UTAH,
*Appellee*.

No. 20200881
Heard February 7, 2022
Filed August 4, 2022

On Certification from the Court of Appeals

Third District, Salt Lake
The Honorable Linda Jones
No. 201906632

Attorneys:

Nathalie S. Skibine, Ralph Dellapiana, Salt Lake City, for appellant

Sean D. Reyes, Att'y Gen., Jonathan S. Bauer, Asst. Solic. Gen.,
Salt Lake City, Katherine M. Filler, Salt Lake City, for appellee

ASSOCIATE CHIEF JUSTICE PEARCE authored the opinion of the
Court, in which CHIEF JUSTICE DURRANT, JUSTICE PETERSEN,
JUDGE BROWN, and JUDGE HOWELL joined.

Due to their retirement, JUSTICE LEE and JUSTICE HIMONAS did not
participate herein; DISTRICT COURT JUDGE JENNIFER A. BROWN and
JUDGE ANTHONY L. HOWELL sat.

JUSTICE DIANA HAGEN became a member of the Court
on May 18, 2022, after oral argument in the matter,
and accordingly did not participate.

ASSOCIATE CHIEF JUSTICE PEARCE, opinion of the Court:

## INTRODUCTION

¶1   The State charged Devin Randolph with four first-degree felonies connected to an alleged sexual assault. The State filed a motion for pretrial detention pursuant to Utah Code section 77-20-1, arguing that there was substantial evidence to support the charges and clear and convincing evidence that Randolph was a substantial danger to the community and likely to flee if released on bail. The State also argued that there were no conditions of pretrial release that would ensure the public's safety or Randolph's appearance in court. The district court granted the State's motion.

¶2   Randolph contends that the State failed to meet its burden of proof under section 77-20-1 and raises four arguments. He first argues that we should apply a non-deferential de novo standard of review to a district court's bail determination. Randolph next argues that the district court misunderstood the meaning of substantial evidence in the bail context and therefore erred when it concluded that the State had presented substantial evidence to support the charges against him. He further argues that the district court erred when it concluded that the State had introduced clear and convincing evidence that he was a substantial danger to the public and likely to flee if released on bail. Randolph last argues that the district court erred when it concluded that there were no conditions of pretrial release that would ensure the safety of the public or Randolph's appearance in court.

¶3   We affirm the district court. To start, we explain that a bail determination requires a district court to make varied findings and conclusions that, in turn, require different standards of review. The question of whether substantial evidence exists to support the charge is a law-like mixed question of law and fact that we review de novo. Questions of whether there is clear and convincing evidence that the defendant is a substantial danger or likely to flee are fact-like mixed questions to which we grant deference to the district court. Applying these standards to this case, we conclude that the district court did not err when it denied Randolph bail.

## BACKGROUND

¶4   Devin Randolph matched with Katrina[1] on a dating app and the two agreed to meet at a coffee shop.[2] According to the statement

---

[1] A pseudonym.

Katrina gave to police, when Katrina arrived at the coffee shop, Randolph "jumped into the front seat" of her car, grabbed her by the neck, and ordered her to find a "more secure" parking space. Katrina drove to a parking lot. Randolph pulled down his pants. Katrina told Randolph "that she did not want to do anything with him" and "argued with him for a long time." Randolph nevertheless grabbed Katrina by the neck and forced his penis into her mouth.

¶5   When Katrina "was eventually able to get up" and continue driving, Randolph told her "to . . . find somewhere secure or it would not be good for her." Katrina drove to another parking lot. When Katrina again told Randolph that "she did not want to do this," Randolph choked her. Randolph forced his penis into Katrina's vagina. Every time Katrina protested, he "squeeze[d] her neck harder."

¶6   The State charged Randolph with aggravated kidnapping, aggravated assault, rape, and forcible sodomy. The State submitted a motion for pretrial detention pursuant to Utah Code section 77-20-1 (at times, Bail Statute). The Bail Statute permits the court to deny a defendant bail "if the [defendant] is charged with a . . . felony when there is substantial evidence to support the charge and . . . clear and convincing evidence that the [defendant] would constitute a substantial danger . . ., or is likely to flee . . ., if released on bail."[3]

---

[2] We rely on the allegations set forth in the probable cause statement to recite the events underlying Randolph's charges.

[3] Utah Code section 77-20-1 has since been repealed and replaced by Utah Code section 77-20-201, which, in part, expands the offenses for which a court may deny a defendant bail. *See* UTAH CODE § 77-20-201(1) (2021). We apply section 77-20-1 because it was the version in effect at the time of the district court's order. *See, e.g.*, *Harvey v. Cedar Hills City*, 2010 UT 12, ¶ 12, 227 P.3d 256 ("As a general rule, when adjudicating a dispute we apply the version of the statute that was in effect 'at the time of the events giving rise to [the] suit.'" (alteration in original) (citation omitted)). But we note that both sections 77-20-1 and 77-20-201 require a district court to decide that there is substantial evidence to support the charge and/or clear and convincing evidence that the defendant is a substantial danger or a flight risk before denying a defendant bail. *See* UTAH CODE § 77-20-1(2)(c) (2020); *id.* § 77-20-201(1)(c) (2021).

UTAH CODE § 77-20-1(2)(c) (2020), *repealed and replaced by* UTAH CODE § 77-20-201(1) (2021).

¶7 The State argued that the probable cause statement containing Katrina's allegations provided the substantial evidence that the Bail Statute required. The State also argued that there was clear and convincing evidence that Randolph posed a substantial danger to the community based on the seriousness of the charges, the fact that Randolph "had never met [Katrina] in person before this incident," and law enforcement's findings that Randolph "spoke to multiple women on the app and appeared sexually aggressive in most conversations." Additionally, the State contended that Randolph was likely to flee if released on bail. Specifically, the State noted that Randolph had left Utah after the alleged incident and had to be extradited back to face the underlying charges. The State also maintained that Randolph had a driver license from, and family in, Georgia, had told others that he was from Canada, and had informed some that "he was planning to leave Utah to go to Oregon and California."

¶8 The State further argued that there were no conditions of pretrial release that would ensure the public's safety or Randolph's appearance in court.[4] It asserted that "supervision and enforcement of such conditions [was] not available through existing pretrial

---

[4] At the time of the State's motion, a district court could not deny bail unless it found that:

> (a) the [defendant] is accused of committing an offense that qualifies the individual for detention under [section 77-20-1(2)] or Utah Constitution, Article I, Section 8;
>
> (b) the prosecution demonstrates substantial evidence to support the charge, and meets all additional evidentiary burdens required under [section 77-20-1(2)] or Utah Constitution, Article I, Section 8; and
>
> (c) . . . no conditions that may be imposed upon granting the [defendant] pretrial release will reasonably ensure [the safety of the public, the defendant's appearance in court, and the furtherance of justice].

UTAH CODE § 77-20-1(7) (2020).

supervision services" and thus "should not be considered as an alternative to pretrial detention."

¶9     Randolph opposed the State's motion. He argued that the State had not presented substantial evidence to support the charges against him. Randolph contended that "[t]he police reports and medical documents . . . demonstrate[d] that there was no injury to the neck or throat of the alleged victim." Randolph stressed that Katrina's physical examination indicated "No Injury" to Katrina's neck, face, eyes, eyelids, or ears. And Katrina's sexual assault examination demonstrated "no trauma" to Katrina's neck (or head, breasts, chest, back, or abdomen). Randolph argued that this "evidence suggest[ed] that allegations of strangulation . . . [were] false." Randolph claimed that this then "call[ed] into question the credibility of the other allegations."

¶10    Randolph also argued that he was not a substantial danger to Katrina or the community for three reasons. First, he had no contact with Katrina since the alleged incident. Second, he had no other violent charges on his record. And third, a court had already issued and served a protective order on Randolph on behalf of Katrina.

¶11    Randolph also sought to disprove the State's assertion that he would flee the state if released on bail. Randolph pointed to an email he sent to the Salt Lake Legal Defender Association after learning of the charges against him, in which he indicated that he was "looking to speak soon to organize a plan . . . to prove [his] innocence." He also pointed to his intent to continue working at a Utah ski resort that upcoming winter. And he argued that "[he] works at other places, typically national parks, during the summers, and . . . [t]hat is why he was found in California."

¶12    Finally, Randolph asserted that there existed "conditions of release such as bail, electronic monitoring and the existing protective order" that would ensure safety to the community and his appearance in court.

¶13 The parties reiterated their respective arguments at a hearing on the State's motion. The State "t[ook] particular issue" with Randolph's argument that there was no evidence of strangulation. The State argued that while Katrina's sexual assault examination showed no injury to her neck, head, breasts, chest, back, or abdomen, it did document "indicators of strangulation," including uncontrolled urination, difficulty breathing, voice changes, neck pain, headache, and uncontrollable shaking. That examination

also showed "an actively bleeding injury to [Katrina's] labia." Randolph countered that the injury to Katrina's labia could have been the result of consensual sex.

¶14 The district court granted the State's motion and denied Randolph bail. It concluded that there was substantial evidence to support the charges. It also concluded that there was clear and convincing evidence that Randolph posed a substantial danger to the community. The court reasoned that "[t]he crimes [were] all violent crimes and while the defendant is entitled to the presumption of innocence, the charges here are concerning and alarming," and "all carry mandatory prison sentences." It further noted that Katrina was "essentially a stranger" to Randolph. The court then concluded that Randolph was likely to flee if released ahead of trial because he "has few ties to Utah and . . . had to be brought back from California to actually face the charges." And the court found that there were no conditions of release that would reasonably ensure the safety of the public, Randolph's appearance in court, and the furtherance of justice.[5]

---

[5] While his appeal was pending, and on the eve of this opinion issuing, Randolph pleaded guilty to aggravated assault and aggravated kidnapping. The State dismissed the other charges. When we learned of the change of plea, we asked the parties to argue whether Randolph's appeal was moot. The State claimed that the appeal was moot because we could no longer grant Randolph the release he sought. Randolph contended that his appeal was not moot because he could still seek leave of the court to withdraw his guilty pleas before sentencing. *See* UTAH CODE § 77-13-6(2)(b). "An issue on appeal is considered moot when the requested judicial relief cannot affect the rights of the litigants." *State v. Legg*, 2018 UT 12, ¶ 13, 417 P.3d 592 (citation omitted). Randolph requests that we reverse the district court's decision denying him bail. A response to Randolph's request, rendered before sentencing, could affect Randolph's rights and influence a decision to attempt to withdraw his guilty plea. We therefore agree that, at the time of this opinion's publication, Randolph's appeal is not moot.

## ANALYSIS

¶15 "[B]y inference," article I, section 8 of the Utah Constitution guarantees bail "as a matter of right." *State v. Kastanis*, 848 P.2d 673, 675 (Utah 1993) (per curiam). But section 8 also imposes limitations on that right. For example, section 8 provides that a court may deny a defendant bail if the defendant has been charged with a crime that is:

> [D]esignated by statute as one for which bail may be denied, if there is substantial evidence to support the charge and the court finds by clear and convincing evidence that the [defendant] would constitute a substantial danger to any other person or to the community or is likely to flee the jurisdiction of the court if released on bail.[6]

UTAH CONST. art. I, § 8(1)(c). The Bail Statute designates all felonies as offenses for which a court may deny a defendant bail. UTAH CODE § 77-20-1(2) (2020), *repealed and replaced by* UTAH CODE § 77-20-201(1) (2021). The statute provides that the district court may deny bail if "there is substantial evidence to support the charge" and "clear and convincing evidence that the [defendant] would constitute a substantial danger to any other individual or to the community, or is likely to flee . . . if released on bail."[7] *Id.* § 77-20-1(2)(c). At the time of

---

[6] Other exceptions include when the defendant is charged with:
> (a) . . . a capital offense when there is substantial evidence to support the charge; or
> (b) . . . a felony while on probation or parole, or while free on bail awaiting trial on a previous felony charge, when there is substantial evidence to support the new felony charge.

UTAH CONST. art. I, § 8(1)(a)–(b).

[7] A court may also deny bail if the defendant is charged with a:
> (a) capital felony, when the court finds there is substantial evidence to support the charge;
> (b) felony committed while on probation or parole, or while free on bail awaiting trial on a previous felony charge, when the court finds there is substantial evidence to support the current felony charge;
> . . .

(continued . . .)

Randolph's bail hearing, the court also needed to find "that no conditions that may be imposed upon granting the [defendant] pretrial release will reasonably ensure [the safety of the public, the defendant's appearance in court, and the furtherance of the criminal justice process]." *Id.* § 77-20-1(7)(c) (2020).

## I. THE BAIL STATUTE REQUIRES THE DISTRICT COURT TO MAKE VARIOUS DETERMINATIONS THAT WE REVIEW WITH VARYING DEGREES OF DEFERENCE

¶16 Randolph first argues—correctly—that the standard of review an appellate court should apply when reviewing a district court's bail determination is unsettled. He asks us to settle it by

---

> (d) felony when the court finds there is substantial evidence to support the charge and the court finds by clear and convincing evidence that the [defendant] violated a material condition of release while previously on bail; or
>
> (e) domestic violence offense if the court finds: (i) that there is substantial evidence to support the charge; and (ii) by clear and convincing evidence, that the [defendant] would constitute a substantial danger to an alleged victim of domestic violence if released on bail.

UTAH CODE § 77-20-1(2)(a)–(b), (d)–(e) (2020). The current version of the Bail Statute reaffirms the denial of bail for these offenses and, among other things, adds two others. *See id.* § 77-20-201(1) (2021). Specifically, a court may deny a defendant bail if the defendant is charged with:

> (f) the offense of driving under the influence or driving with a measurable controlled substance in the body if: (i) the offense results in death or serious bodily injury to an individual; and (ii) the court finds: (A) that there is substantial evidence to support the charge; and (B) by clear and convincing evidence, that the [defendant] would constitute a substantial danger to the community if released on bail; or
>
> (g) . . . a felony [riot] if there is substantial evidence to support the charge and the court finds, by clear and convincing evidence, that the [defendant] is not likely to appear for a subsequent court appearance.

*Id.* § 77-20-201(1)(f)–(g).

clarifying that an appellate court affords no deference to a district court's decision to deny bail.

¶17 "The appropriate standard of review for a lower court's decision is dependent upon the 'nature of the issue.'" *State ex rel. E.R.*, 2021 UT 36, ¶ 14, 496 P.3d 58 (citation omitted). Thus, "[a] key question is whether the trial court's decision qualifies as a finding of fact, a conclusion of law, or a determination of a mixed question of law and fact." *In re Adoption of Baby B.*, 2012 UT 35, ¶ 40, 308 P.3d 382.

¶18 Findings of fact typically "entail[] the empirical, such as things, events, actions, or conditions happening, existing, or taking place, as well as the subjective, such as state of mind." *Id.* (alteration in original) (citation omitted). Because a district court is better able to "judg[e] credibility and resolv[e] evidentiary conflicts," *State v. Levin*, 2006 UT 50, ¶ 20, 144 P.3d 1096 (alterations in original) (citation omitted), its factual determinations enjoy "a high degree of deference," *E.R.*, 2021 UT 36, ¶ 15, and are overturned "only when clearly erroneous," *id.* (citation omitted).

¶19 Conclusions of law require the district court to "analy[ze] . . . abstract legal questions," *id.* ¶ 16 (citation omitted), "regardless of the specific facts" of the case, *Martinez v. Media-Paymaster Plus/Church of Jesus Christ of Latter-day Saints*, 2007 UT 42, ¶ 29, 164 P.3d 384. Because appellate courts are better equipped to ensure that the answers to those questions develop into "a clear, uniform body of law," "[w]e apply a non-deferential *de novo* standard." *E.R.*, 2021 UT 36, ¶ 16.

¶20 "Mixed questions [of law and fact] fall somewhere in the twilight between deferential review of findings of fact and searching reconsideration of conclusions of law." *Baby B.*, 2012 UT 35, ¶ 42. Mixed questions arise when a district court must apply a particular rule of law to a particular set of facts. *See, e.g., Levin*, 2006 UT 50, ¶ 21. With these questions, the standard of review tends to be like their name: mixed. *See Baby B.*, 2012 UT 35, ¶ 42 ("[O]ur review [of mixed questions of law and fact] is sometimes deferential and sometimes not.").

¶21 In *State v. Pena*, 869 P.2d 932 (Utah 1994), "[w]e envisioned multiple standards of review for various types of mixed questions, occupying a spectrum of deference falling between the nondeferential de novo standard of review and the highly deferential clearly erroneous standard of review," *Sawyer v. Dep't of Workforce Servs.*, 2015 UT 33, ¶ 9, 345 P.3d 1253 (discussing *Pena*, 869

P.2d at 938). But we have since moved away from *Pena*'s "broad spectrum approach," *id.* ¶ 11, citing its tendency to produce "indefinite standards" that prove "difficult to describe and even more difficult . . . to predict and apply," *id.* ¶ 10.

¶22 We now "appl[y] a binary method for determining the appropriate standard of review for mixed questions." *Id.* ¶ 11. Under that method, the standard of review for a mixed question of law and fact depends on whether the question is better classified as a law-like mixed question or a fact-like mixed question. *Id.*

¶23 A mixed question is law-like "when the legal concept is easily defined by appellate courts or when appellate courts [limit a district court's discretion] for policy reasons." *Levin*, 2006 UT 50, ¶ 24. Law-like mixed questions thus "lend[ ] themselves to consistent resolution by uniform precedent." *E.R.*, 2021 UT 36, ¶ 19 (alteration in original) (citation omitted). And so they warrant de novo review. *Id.*

¶24 Fact-like mixed questions generally arise "when [a district court's] application of a legal concept is highly fact depend[e]nt and variable." *Levin*, 2006 UT 50, ¶ 24. Or when "the factual scenarios presented are 'so complex and varying that no rule adequately addressing the relevance of all these facts can be spelled out.'" *E.R.*, 2021 UT 36, ¶ 20 (citation omitted). For this reason, we review fact-like mixed questions deferentially. *Id.*

¶25 "In determining whether a mixed question should be deemed law-like or fact-like, we evaluate the 'marginal costs and benefits' of conducting either a searching de novo review or a deferential review of a lower tribunal's resolution of the mixed question." *Sawyer*, 2015 UT 33, ¶ 12 (citation omitted). This "balancing test" involves the consideration of three factors:

> (1) the degree of variety and complexity in the facts to which the legal rule is to be applied; (2) the degree to which a trial court's application of the legal rule relies on facts observed by the trial judge, such as a witness's appearance and demeanor, relevant to the application of the law that cannot be adequately reflected in the record available to appellate courts; and (3) other policy reasons that weigh for or against granting discretion to trial courts.

*Levin*, 2006 UT 50, ¶ 25 (citation omitted) (internal quotation marks omitted); *id.* ¶ 27 (referring to the above as a "balancing test").

¶26 "[T]he greater the complexity and variety of the facts" or "the greater the importance of a trial court's credibility assessments," "the stronger the case for appellate deference." *Id.* ¶ 26. But even where the first two factors might favor deference to the district court, the third factor "may nevertheless . . . limit that deference" for important policy reasons. *Id.*

¶27 "[W]e note that the factual and mixed findings described above may contain embedded legal questions." *Baby B.*, 2012 UT 35, ¶ 47. In those cases, "we must be vigilant in our review of both purely factual and mixed findings to ensure that they are based on correct legal principles." *Id.* In *Baby B.*, we illustrated this concept with a hypothetical involving a statute prohibiting "the wearing of a red shirt." *Id.* We explained that while this statute would require a district court "to make a factual finding on the empirical question of the color of an individual party's shirt," it "could also entail an embedded legal conclusion, such as whether fuchsia shirts are prohibited." *Id.* And unlike our treatment of the district court's factual finding, "we would give no deference on the legal question of the meaning of the statutory term 'red,' deciding for ourselves whether fuchsia shirts are covered." *Id.* Therefore, "if a trial court finds that a particular fuchsia shirt is . . . covered by the statute, the applicable standard of review would require us to distinguish the factual finding on . . . the shirt's color from the legal conclusion on what is meant by the term 'red.'" *Id.*

¶28 As this case highlights, the converse is also true. More precisely, a legal or mixed question may house a factual finding. When those circumstances arise, we separate the district court's factual findings from its legal conclusions, granting deference to the former but none to the latter.

¶29 To deny bail, a district court must determine that there is substantial evidence to support the offense charged. UTAH CODE § 77-20-1(2)(c) (2020). The court must also find that there is clear and convincing evidence that the defendant is either a substantial danger or likely to flee if released on bail. *Id.* Finally, the district court must find that no available conditions of pretrial release will reasonably ensure the safety of the public, the defendant's appearance in court, and the furtherance of the criminal justice process. *Id.* § 77-20-1(7)(c) (2020). As we stated above, "[t]he standard of appellate review varies depending on the nature of the lower court's analysis." *Baby B.*, 2012 UT 35, ¶ 40; *see also State v. Thurman*, 846 P.2d 1256, 1266 (Utah 1993) ("[W]e exercise our powers to fashion standards of review . . . in light of the particular determination under review.").

The Bail Statute asks a district court to answer three separate questions. As we explain below, while one of those questions is a purely factual one, the remaining two pose mixed questions of law and fact. We thus assess the appropriate standard of review for each of those questions.[8]

### A. A District Court's Underlying Factual Findings and Credibility Assessments Are Given Deference, But Its Ultimate Conclusion That Substantial Evidence Exists to Support the Charge Is a Law-Like Mixed Question Reviewed De Novo

¶30   The parties rightly agree that whether substantial evidence exists to support the offense charged presents a mixed question of law and fact because it requires a district court to apply the substantial evidence standard to the evidence presented in each case. *See Murray v. Utah Lab. Comm'n*, 2013 UT 38, ¶ 33, 308 P.3d 461 ("[A] mixed question arises when a[] . . . lower court must apply 'a legal standard to a set of facts unique to particular case.'" (citation omitted)). But while the parties agree that the district court's substantial evidence determination presents a mixed question of law and fact, the parties disagree as to whether that question is more law-like or fact-like.

¶31 Randolph argues that the district court's substantial evidence determination is more law-like, and we should thus review it for correctness. In his view, this determination does not always involve complicated facts ill-suited for a cold, appellate record. And he claims there are strong policy reasons that weigh against deferential review.

---

[8] The State claims that we do not need to determine the standards of review that apply to a pretrial detention determination because, in its eyes, our case law has already settled them. But the three cases the State cites are unenlightening. In both *State v. Pappas*, 696 P.2d 1188, 1190 (Utah 1985), and *Ex parte Clawson*, 5 P. 74, 76 (Utah 1884), a defendant sought postconviction release pending appeal, which, at the time, was discretionary by statute or court rule. And in *Ex parte Lowrie*, we heard a plea for pretrial release pursuant to a Utah statute which stated that a court "may," as a matter of discretion, grant a defendant bail when the defendant's trial has been delayed past "the next term of the court." 7 P. 493, 493–94 (Utah 1885). Because this case is not like those cases, those holdings do not help us here.

¶32 To the State, the substantial evidence determination is more fact-like, and it argues for a deferential standard of review. The State contends that bail determinations are fact-intensive, laden with credibility assessments, and incompatible with bright-line rules. The State also claims that a deferential standard of review is in line with our case law and the case law of other jurisdictions.

¶33 As we explained above, we determine the degree of deference afforded to a district court's resolution of a mixed question of law and fact by determining whether the mixed question is more law-like or fact-like. And we make that determination by analyzing the three factors we set out in *Levin*. *See* 2006 UT 50, ¶ 25.

¶34 *State v. Virgin* is instructive—both because it models the analysis and because it arises in a similar setting. 2006 UT 29, 137 P.3d 787. In *Virgin*, we applied what was, in essence, the *Levin* test to settle the standard of review an appellate court should apply to a magistrate's bindover determination.[9]

¶35 As to the first and second *Levin* factors—which respectively consider "the degree of complexity and variety in the facts," *Levin*, 2006 UT 50, ¶ 38, and "the degree to which the application of the legal rules relies on 'facts' observed by the trial judge," *id.* ¶ 40—we noted that preliminary hearings put magistrates "in a position to" consider a wide variety of facts and "observe and assess witness demeanor and credibility," *Virgin*, 2006 UT 29, ¶¶ 29, 31. With regard to policy, we reasoned that "[w]hile uniformity and clarity in the law are always worthy goals, granting no deference in the bindover context," where the questions are "highly fact-depend[e]nt," may not "necessarily promote those goals." *Id.* ¶ 32. "As an additional policy consideration," we noted that "severely limiting magistrates' discretion in applying the probable cause standard may have the unintended consequence of causing them to unjustly bind a defendant over where they would not have otherwise in order to reduce the possibility of reversal." *Id.* ¶ 33. "After balancing these factors, we conclude[d] that magistrates

---

[9] *Virgin* actually applied the four-factor test set forth in *Pena*. 2006 UT 29, ¶ 28. In *Levin*, we refined the *Pena* test by "dropp[ing] the 'novelty' factor" and by "rephras[ing] the factors . . . in a manner that better reflects their usefulness in selecting a standard of review from somewhere along the spectrum of deference." 2006 UT 50, ¶¶ 28–29.

should have some discretion in making their bindover determinations." *Id.* ¶ 34. But we said that "[t]his discretion is limited, however, because in the bindover context a magistrate's authority to make credibility determinations is limited." *Id.*

¶36 Because *Virgin* preceded *Levin*, its "limited deference" standard is considered one of the "indefinite standards of review" *Pena* and its progeny produced. *Sawyer*, 2015 UT 33, ¶ 10. We emphasize that we no longer characterize standards of review in this way. *See supra* ¶¶ 21–22. *Virgin* is nonetheless helpful, however, because it considered similar factors in a context comparable to the one presented here.

¶37 Turning to this case, the first *Levin* factor evaluates "the degree of variety and complexity in the facts to which the legal rule is to be applied." *Levin*, 2006 UT 50, ¶ 25. The Bail Statute potentially denies bail to defendants charged with capital crimes, felonies, and domestic violence offenses. UTAH CODE § 77-20-1(2) (2020). While the factual evidence in support of those charges may or may not be complex, it will certainly vary from case to case. *See Virgin*, 2006 UT 29, ¶ 29 ("[W]hile the facts surrounding the myriad cases brought in [the bindover] context may not all be complex, they are sure to be varying."). And while we do not think the factual circumstances will generally be "so . . . varying that no rule adequately addressing the relevance of all these facts can be spelled out," *E.R.*, 2021 UT 36, ¶ 20 (citation omitted), we do think that a district court's "firsthand access to factual evidence" lends itself to affording deference to the district court, *Baby B.*, 2012 UT 35, ¶ 40.

¶38 The second factor considers "the degree to which a trial court's application of the legal rule relies on 'facts' observed by the trial judge . . . that cannot be adequately reflected in the record," such as a witness's appearance, demeanor, and overall credibility. *Levin*, 2006 UT 50, ¶ 25 (citation omitted). In *Virgin*, we said that "preliminary hearings are such that magistrates are in a position to observe and assess witness demeanor and credibility." 2006 UT 29, ¶ 31. And although these preliminary hearing credibility assessments are "limited to determining whether evidence is wholly incapable of supporting a reasonable belief as to a part of the prosecution's case," they nonetheless warrant "some discretion" to a magistrate's bindover decision. *Id.*

¶39 The case for granting deference to the district court is even stronger in the bail context than it was in the preliminary hearing context we examined in *Virgin*. A motion for pretrial detention

prompts the presentation of evidence from both sides, which could include live testimony.[10] And although the hearing has a "narrow and focal issue," *Chynoweth v. Larson*, 572 P.2d 1081, 1082 (Utah 1977) (citation omitted)—determining, in part, whether the evidence presented constitutes substantial evidence to support the offense charged—it "is not a unilateral one" wherein "the prosecutor . . . limit[s] the testimony to his [or her] direct examination of the State's witnesses," *id.* (citation omitted). The defendant has the ability to produce witnesses and to question those that the State offers. *See id.* The district court must then decide, based, at least potentially in part, on the credibility of the witnesses' statements, if substantial evidence exists to support the charge. In other words, "the granting of bail is a discretionary matter," 8A AM. JUR. 2D *Bail and Recognizance* § 51 (2d ed. 2022), determined by the parties' "producing witnesses to introduce facts pertinent to the inquiry," *Chynoweth*, 572 P.2d at 1082 (citation omitted), and the district court's credibility assessments of those witnesses. Because credibility determinations are an important component of a district court's pretrial detention decision, the second factor also weighs in favor of deference to the district court.[11]

---

[10] We note that an alleged victim now has the statutory "right to be heard at a pretrial detention hearing." UTAH CODE § 77-20-206(6). The State and the defendant similarly have "a right to subpoena witnesses to testify." *Id.* § 77-20-206(4)(b).

[11] Randolph suggests that we should analyze the first two *Levin* factors using the specific facts of his case. But while those facts may illuminate the *Levin* inquiry, they do not control it. The *Levin* test operates on a categorical level. It does not turn on the specifics of any one case. This is because the *Levin* factors measure "the 'relative capabilities of each level of the court system'" to address a given issue. *See Levin*, 2006 UT 50, ¶ 19 (citation omitted); *see also id.* ¶ 31 ("[O]ur goal in applying the [*Levin*] test is to allocate tasks between the trial and appellate courts based on their institutional roles and competencies."); *Thurman*, 846 P.2d at 1266 ([T]he choice of the appropriate standard of review 'turn[s] on a determination that, as a matter of the sound administration of justice, one judicial actor is better positioned than another to decide the issue in question.'" (second alteration in original) (citation omitted)). In this case, therefore, we consider the *Levin* factors as they apply to bail
(continued . . .)

¶40 But the third *Levin* factor plays out differently. "The third factor requires that we take into consideration policy factors related to the degree of deference that should be applied." *Levin*, 2006 UT 50, ¶ 26. Randolph argues that "[t]here are policy reasons for limited deference" on this issue. He correctly points out that "the right to bail is a fundamental right." (Quoting *Scott v. Ryan*, 548 P.2d 235, 236 (Utah 1976).) And he argues that "the question[] of . . . whether there is substantial evidence supporting a charge" is a "constitutional and statutory question[] that call[s] for consistency." Randolph is right.

¶41 Before a district court may deny a defendant bail, it must conclude that the evidence presented constitutes substantial evidence supporting the offense charged. But while this inquiry will surely be aided by the district court's factual findings and credibility assessments, "the ultimate question is," as we described in another context, "the *legal* effect of the facts." *Murray*, 2013 UT 38, ¶ 40 (emphasis added). And that is a question that appellate courts are in just as good a position to decide as district courts. *Drake v. Indus. Comm'n of Utah*, 939 P.2d 177, 181 (Utah 1997) ("[T]he legal effect of those facts 'is the province of the appellate courts.'" (citation omitted)).

¶42 Legal standards, like the substantial evidence standard for a bail determination, require a uniform understanding among the district courts as to their meaning and operation. In other words, they require "clarity and consistency" within the law. *See Levin*, 2006 UT 50, ¶ 41 (holding that "the custodial interrogation inquiry" is reviewed de novo because "there is a strong interest in promoting clarity and consistency in our state's [Fifth Amendment] jurisprudence"). We explained in *Levin* that clarity and consistency within the law "benefit" both "the accused by offering predictable constitutional protections" and "the State by providing better guidance" as to the quantum of evidence required to meet the relevant legal standard. *Id.*

¶43 Appellate courts, "with their collective experience and their broader perspective," *id.* ¶ 20 (citation omitted), and "the[ir] capacity to create broad rules," *Sawyer*, 2015 UT 33, ¶ 13, are better positioned to ensure the level of clarity and consistency needed, *see Thurman*, 846 P.2d at 1271 ("While the trial court is primarily concerned with

decisions generally, but not as they apply to Randolph's case in particular.

the proper resolution of factual issues under the controlling law, the appellate court addresses itself to the clarity and correctness of the developing law in order to provide unambiguous direction to those whose further rights and responsibilities are affected." (citation omitted)). The third factor accordingly merits restraining the level of deference granted to the district court.

¶44 We thus conclude that in light of the strong policy interest in clear and consistent legal standards, and the ability of the appellate courts to promote that interest, a district court's ultimate determination that substantial evidence exists to support the charge is a law-like mixed question reviewed de novo. But we stress that to the extent the district court makes factual findings in support of that decision, we give deference to those findings. And we will overturn those findings only when they are clearly erroneous.

*B. A District Court's Conclusion That There Is Clear and Convincing Evidence That the Defendant Is a Substantial Danger or Likely to Flee Is a Fact-Like Mixed Question Reviewed Deferentially*

¶45 The parties agree—again, rightly—that whether there is clear and convincing evidence that the defendant is a substantial danger or likely to flee if released on bail is also a mixed question of law and fact. *See Murray*, 2013 UT 38, ¶ 33. For largely the same reasons, Randolph asks us to review the district court's clear and convincing determination for correctness, whereas the State advocates for deferential review.

¶46 The first *Levin* factor shakes out much in the same way as it did above. The facts relevant to a finding that the defendant is dangerous or likely to flee have the potential to be complex. We can also foresee, as the State argues, that the facts placed before a district court will "vary[,] both in number and persuasiveness." Indeed, the same fact—take the defendant's ties to other states, for example—can look and weigh differently in each case, depending on the presence or absence of other facts related to a defendant's ties to Utah. These potentially complex and certainly varying factual scenarios "make[] it difficult to articulate a rule that adequately accounts for all the variations that [will] arise." *Virgin*, 2006 UT 29, ¶ 29. The first factor thus weighs in favor of deference to the district court.

¶47 The second *Levin* factor also weighs in favor of deference. As we explained above, a motion and subsequent hearing for pretrial detention create space for a district court to make certain credibility assessments. *Supra* ¶ 39. But those assessments can be even more impactful to a district court's determination that clear and

convincing evidence exists that the defendant is dangerous or likely to flee than they would be to a court's determination that substantial evidence exists to support the charge. The district court could potentially consider the written and/or oral statements from "the defendant, his alleged confederates, if any, his family, and those with whom he will probably associate if released." *United States v. Portes*, 786 F.2d 758, 763 (7th Cir. 1985) (explaining that district courts' opportunity to listen to these statements "requires that we give great weight to the assessment of those judicial officers"). And a district court must decide if those statements merit trust or suspicion. Is the defendant telling the truth, for example, when he claims that he intends to return to court to defend his case? Because these kinds of credibility assessments may not be adequately captured in a cold appellate record, the second factor leans in favor of deference to the district court.

¶48 As to the third factor, whether clear and convincing evidence exists as to the defendant's dangerousness or likeliness to flee is, at its core, more judgment-based and predictive, and thus more fact-like, than its substantial evidence sibling. As the State argues, a district court must "predict[] . . . the likelihood that the defendant's release will endanger the victim or the public, the likelihood that he will appear for trial, and how conditions of release [will] alter those perceived likelihoods." So while the facts are merely a means to an end in a district court's substantial evidence determination, in its clear and convincing determination, the facts are nearer to the end itself. For this reason, "it is . . . not possible [and] not wise for an appellate court to define strictly how [the clear and convincing standard] is to be applied to each new set of facts." *Levin*, 2006 UT 50, ¶ 22. This final factor thus also favors deference.

¶49 A district court's determination that there is clear and convincing evidence that the defendant is a substantial danger or likely to flee if released is a fact-intensive, credibility-assessment-dependent inquiry that deserves deference. We reverse that determination only if it is clearly erroneous.

*C. A District Court's Conclusion That There Are No Conditions of Pretrial Release Available That Would Reasonably Ensure the Safety of the Public, the Defendant's Appearance in Court, and the Furtherance of Justice Is a Factual Finding Reviewed for Clear Error*

¶50 Though not entirely clear, the parties seem to once again agree that whether there are available conditions of pretrial release that would reasonably ensure the safety of the public, the

defendant's appearance in court, and the furtherance of the criminal justice process is a mixed question of law and fact. We disagree. The issue of whether there are no conditions of pretrial release that would ensure the safety of the public, the defendant's appearance in court, and the furtherance of justice is a purely factual one.[12]

¶51 As we explained above, findings of fact generally "entail[] the empirical, such as things, events, actions, or conditions happening, existing, or taking place, as well as the subjective, such as state of mind." *Baby B.*, 2012 UT 35, ¶ 40 (alteration in original) (citation omitted). "[B]ecause 'a lower court often has a comparative advantage in its firsthand access to factual evidence,'" and because "factual issues 'are unique to each case,' there is 'no particular benefit in establishing settled appellate precedent on issues of fact.'" *E.R.*, 2021 UT 36, ¶ 15 (citations omitted). We thus review these issues "with a 'highly deferential standard,' overturning the lower court 'only when clearly erroneous.'" *Id.* (citation omitted).

¶52 Whether there are no effective conditions of pretrial release available does not require a district court to either engage with an "abstract legal question[]," *id.* ¶ 16 (describing conclusions of law), or analyze the interplay between a given rule of law and a given set of facts, *see Baby B.*, 2012 UT 35, ¶ 42 (describing mixed questions). Instead, the answer to that question will very likely be dependent on the district court's credibility assessments and "firsthand access to [the] factual evidence." *See E.R.*, 2021 UT 36, ¶ 15. A "heavy-handed, fresh reexamination" of this determination thus presents "a potential downside and no significant upside." *Baby B.*, 2012 UT 35, ¶ 40. We accordingly review it for clear error.

## II. THE DISTRICT COURT DID NOT ERR WHEN IT GRANTED THE STATE'S MOTION FOR PRETRIAL DETENTION

*A. The District Court Did Not Err When It Concluded That There Was Substantial Evidence to Support the Felony Charges Against Randolph*

---

[12] At the time, the Bail Statute required the court in Randolph's case to conclude "that no conditions that may be imposed upon granting the individual pretrial release will reasonably ensure" the safety of the public, the defendant's appearance in court, and the furtherance of the criminal justice system. UTAH CODE § 77-20-1(7)(c) (2020), *repealed and replaced by* UTAH CODE § 77-20-206(5) (2021).

1. Substantial Evidence Exists When the Evidence Adduced by the State Furnishes a Basis for a Reasonable Jury to Reach a Guilty Verdict

¶53 Randolph argues that the district court erred when it concluded that there was substantial evidence to support the felony charges against him. In addressing that argument, we first consider Randolph's claim that the district court misunderstood the meaning of substantial evidence in the bail context.

¶54 Randolph contends that "[t]here is little case law in Utah providing guidance on . . . the 'substantial evidence' standard." He asks us to define substantial evidence using, mainly, policy and case law from other jurisdictions. Randolph asks us to use that policy and case law to define substantial evidence as "something close to proof beyond a reasonable doubt," or at the very least, "somewhere near clear and convincing." In Randolph's view, those standards best align with not only the decisions of other states but also the recognition that the denial of bail is a deprivation of liberty and a hindrance to defense preparation and strategy. Finally, Randolph asserts that "whatever the standard of proof," we should refuse to "view the evidence in the light most favorable to the State or ask whether any reasonable person could find the defendant guilty."

¶55 A court may deny a defendant his right to bail "if the [defendant] is charged with a . . . felony when there is substantial evidence to support the charge and . . . clear and convincing evidence that the [defendant] would constitute a substantial danger . . . or is likely to flee . . . if released." UTAH CODE § 77-20-1(2)(c) (2020), *repealed and replaced by* UTAH CODE § 77-20-201(1)(c) (2021). This statutory language tracks article I, section 8 of the Utah Constitution, which states in pertinent part:

> All persons charged with a crime shall be bailable except . . . persons charged with any other crime, designated by statute as one for which bail may be denied, if there is substantial evidence to support the charge and the court finds by clear and convincing evidence that the [defendant] would constitute a substantial danger . . . or is likely to flee . . . if released on bail.

UTAH CONST. art. I, § 8(1)(c).

¶56 Stated another way, the relevant statutory and constitutional provisions deny bail on the same grounds. Because the Legislature

used the words of the constitution in the statute, we presume that the Legislature intended that the phrase "substantial evidence" carry the same meaning in the statute that it does in the constitution. Unless a party can convince us that the Legislature intended the statutory language to have a different meaning, this places us in the position of interpreting what the people of Utah intended "substantial evidence" to mean when they voted it into article I, section 8 of the constitution.

¶57 We begin our constitutional analysis by seeking "to ascertain and give power to the meaning of the [constitutional] text as it was understood by the people who validly enacted it as constitutional law." *Richards v. Cox*, 2019 UT 57, ¶ 13, 450 P.3d 1074. "This approach . . . requires us to determine the 'original public meaning' of the constitutional provision in question at the time it was adopted." *Salt Lake City Corp. v. Haik*, 2020 UT 29, ¶ 12, 466 P.3d 178 (citation omitted). We discern that meaning by "consider[ing] all relevant factors, including the language, other provisions in the constitution that may bear on the matter, historical materials, and policy." *In re Young*, 1999 UT 6, ¶ 15, 976 P.2d 581.

¶58 In 1895, when our constitution was first adopted, article I, section 8 read: "All prisoners shall be bailable by sufficient sureties, except for capital offenses when the proof is evident or the presumption strong." UTAH CONST. art. I, § 8 (amended 1973); *see also State v. Kastanis*, 848 P.2d 673, 674 (Utah 1993) (per curiam). A 1973 amendment expanded that exception to include felony offenses committed "while on probation or parole, or while free on bail awaiting trial on a previous felony charge." UTAH CONST. art. I, § 8 (amended 1988); *see also Scott*, 548 P.2d at 236. In 1988, the voters amended article I, section 8 to its current version. *See* UTAH CONST. art. I, § 8; *see also Proposition No. 1 Bail Amendment*, *in* UTAH VOTER INFORMATION PAMPHLET, at 10 (1988), https://elections.utah.gov /Media/Default/Historical%20VIPs/1988%20VIP.pdf. That is, they once again expanded the exceptions to a defendant's right to bail to include "any other crime, designated by statute as one for which bail may be denied," and, most relevantly, changed the language "proof is evident or the presumption strong" to "substantial evidence to support the charge." *See Proposition No. 1 Bail Amendment*, *in* UTAH VOTER INFORMATION PAMPHLET, at 10 (1988), https:// elections.utah.gov/Media/Default/Historical%20VIPs/1988%20VIP .pdf; *see also* UTAH CONST. art. I, § 8.

¶59 Randolph suggests that we are writing on a blank slate and free to choose an interpretation that best serves the people of Utah.

But we have already addressed the meaning of "substantial evidence" in article I, section 8. *See Kastanis*, 848 P.2d at 673.

¶60 In *State v. Kastanis*, we noted that the Utah Constitutional Revision Commission (CRC) proposed the 1988 amendment. *Id.* at 675. We also noted that the CRC represented it sought to change the language "proof is evident or the presumption strong" to "substantial evidence to support the charge" "for the sole purpose of modernizing the language." *Id.* We recounted that at a 1988 CRC meeting, "a member of the Criminal Rules Committee reported that most lawyers do not understand the standard of 'proof evident-presumption strong.'" *Id.* The CRC proposed "that the language be changed to 'substantial evidence' because it is more understandable." *Id.*

¶61 The *Kastanis* court also noted that modernizing the language without changing the underlying meaning had been "given as a rationale for the change" in the 1988 voter information pamphlet, "which contains explanations, pro and con, for proposed constitutional changes." *Id.* There, "the rationale for the change of language . . . states simply that the new language 'is more commonly used and understood by the courts and attorneys.'" *Id.* (citing *Proposition No. 1 Bail Amendment*, *in* UTAH VOTER INFORMATION PAMPHLET, at 7 (1988), https://elections.utah.gov/Media/ Default/Historical%20VIPs/1988%20VIP.pdf). From these materials, we concluded that there was "nothing in the history of the 1988 amendment to article I, section 8 that would indicate an intent on the part of either the drafters of the amendment or the voters . . . to change the quantity or quality of the proof necessary to support [the] denial of bail." *Id.* We thus decided that "the new language should be applied in the same way as the previous language." *Id.*

¶62 *Kastanis* then analyzed *Chynoweth v. Larson*, 572 P.2d 1081 (Utah 1977), which the court characterized as the "most recent[] appli[cation]" of "'the proof evident or presumption strong' standard," *Kastanis*, 848 P.2d at 675–76. And we held that in *Chynoweth*, we had concluded that a district court may not deny a defendant bail unless "the facts adduced by the State, notwithstanding contradiction of them by defense proof, warrant the conclusion that if believed by a jury they furnish a reasonable basis for a verdict of [guilty]." *Id.* at 676 (emphasis omitted) (citing *Chynoweth*, 572 P.2d at 1082).

¶63 Randolph claims that "*Kastanis* ultimately reversed because the defense was not permitted a full opportunity to 'bring his own

evidence and witnesses,'" (citing *id.*), and "therefore did not set a bar for 'substantial evidence.'" Randolph is right to read *Kastanis* as holding that a district court should "afford[] [a defendant] full opportunity to present evidence at a bail hearing." *Id.* But he wrongly disregards *Kastanis'* holding concerning the meaning of substantial evidence. *Kastanis* recites that the "parties request[ed] th[e] court to make a determination of the quantity of proof necessary to support a denial of bail . . ., as a result of the 1988 amendment of article I, section 8 of the Utah Constitution." *Id.* at 674. To answer that question, we opined that the substantial evidence standard means what we said the proof evident-presumption strong standard meant in *Chynoweth*. *Id.* at 676.

¶64  *Kastanis* therefore holds that the quantity of proof necessary to support a denial of bail under the substantial evidence standard is the same quantity of proof necessary to support a denial of bail under the old proof evident-presumption strong standard. *Id.* And in *Chynoweth*, we explained that the proof evident-presumption strong standard is met when "the facts adduced by the State, notwithstanding contradiction of them by defense proof, warrant the conclusion that if believed by a jury they furnish a reasonable basis for a verdict of [guilty]." 572 P.2d at 1082 (citation omitted).

¶65  Neither *Kastanis* nor *Chynoweth* have been overruled. And so we grant them "deference under *stare decisis*." *Rutherford v. Talisker Canyons Fin., Co.*, 2019 UT 27, ¶ 30, 445 P.3d 474; *see also Lieber v. ITT Hartford Ins. Ctr., Inc.*, 2000 UT 90, ¶ 22 n.14, 15 P.3d 1030 ("[A]s long as [a case] has not been overruled, it is still the law and binding precedent, and constitutes the standard against which any argument for change must be evaluated.").

¶66 Randolph invites us to disregard *Kastanis* and "now hold that 'substantial evidence' is something nearer to proof beyond a reasonable doubt." But "[w]e do not overrule our precedents lightly." *Rutherford*, 2019 UT 27, ¶ 27 (citation omitted). "Concomitantly, '[t]hose asking us to overturn prior precedent have [the] substantial burden of persua[ding]'" us "that our prior case law is unworthy of *stare decisis* respect." *Id.* (first alteration in original) (citations omitted). To meet that burden, a party must prove that "none of the factors that give stare decisis special weight are present." *See Eldridge v. Johndrow*, 2015 UT 21, ¶ 23, 345 P.3d 553. Those factors include: "(1) the persuasiveness of the authority and reasoning on which the precedent was originally based, and (2) how firmly the precedent has become established in the law since it was handed down." *Id.* ¶ 22.

¶67 Randolph hints at these factors in his brief, but never develops them to the point that we could justify overturning our precedent. Perhaps most tellingly, Randolph does not convince us that *Kastanis* misinterpreted the meaning of substantial evidence or that the Legislature intended something other than the constitutional standard when it put the words "substantial evidence" into the Code.

¶68 Randolph instead argues that we should define the substantial evidence standard to mean what courts in other jurisdictions have said it means. That is, "something nearer to proof beyond a reasonable doubt," or, at the very least, clear and convincing.[13] But those cases do not speak to the meaning of the Utah Constitution or what the Utah voters had in mind when they amended article I, section 8. *See Patterson v. State*, 2021 UT 52, ¶ 92, 504 P.3d 92 ("[W]hen the people of Utah amend the constitution, we look to the meaning that the public would have ascribed to the amended language when it entered the constitution."). Nor do they speak to what the Legislature intended when it seemed to put that standard into the Bail Statute.

¶69 Randolph raises interesting policy arguments about what interpretation of "substantial evidence" would best serve the people of Utah. But when we interpret our constitution, we are not simply shopping for interpretations that we might like. We start our analysis by trying to understand what the language meant to those

---

[13] The State claims that we should decline to reach this argument because Randolph has failed to preserve it. The State is right—Randolph did not ask the district court to reconsider *Kastanis* or the meaning of substantial evidence, "[a]nd under an ordinary application of our rules of preservation we may be precluded from reaching this issue on appeal." *Estate of Faucheaux v. City of Provo*, 2019 UT 41, ¶ 35 n.13, 449 P.3d 112. But the district court could not have overturned *Kastanis* or altered the meaning of substantial evidence, even if Randolph had asked. "And we generally do not require parties to spend time and resources making futile arguments below." *Id.* So we proceed to the merits of Randolph's argument. But while we do not fault Randolph for his lack of preservation, we emphasize that the "best practice" is "to raise all possible arguments below, if only just to preserve and create a record of the arguments for a potential appeal." *Id.*

who voted on it, and we go from there. Because Randolph has not convinced us that the *Kastanis* court got that wrong, he has not met his burden.

¶70 Randolph additionally argues that to the extent *Kastanis* defines substantial evidence, it does not define it to mean probable cause. We agree. And we hope that is apparent from our previous discussion. But, to be clear, the substantial evidence standard applied at a bail hearing and the probable cause standard applied at a preliminary hearing are different.

¶71 Article I, section 12 of the Utah Constitution "limit[s] 'the function of [a preliminary hearing] . . . to determining whether probable cause exists.'" *State v. Goins*, 2017 UT 61, ¶ 31, 423 P.3d 1236 (third alteration in original) (citing UTAH CONST. art. I, § 12). Probable cause exists when "the prosecution . . . produce[s] evidence sufficient to support a reasonable belief that the defendant committed the charged crime." *State v. Virgin*, 2006 UT 29, ¶ 17, 137 P.3d 787. "Under the probable cause standard, the prosecution has the burden of producing 'believable evidence of all the elements of the crime charged,' but this evidence does not need to be 'capable of supporting a finding of guilt beyond a reasonable doubt.'" *Id.* ¶ 20 (citation omitted).

¶72 "The fundamental purpose" of the probable cause standard is to "ferret[] out . . . groundless and improvident prosecutions." *Id.* (citation omitted). In light of this purpose, we have "by and large, . . . place[d] most credibility determinations outside the reach of a magistrate at a preliminary hearing." *Goins*, 2017 UT 61, ¶ 33. As we explained in *Virgin*,

> [M]agistrates may only disregard or discredit evidence that is wholly lacking and incapable of creating a reasonable inference regarding a portion of the prosecution's claim. It is inappropriate for a magistrate to weigh credible but conflicting evidence at a preliminary hearing as a preliminary hearing is not a trial on the merits but a gateway to the finder of fact. Therefore, magistrates must leave all the weighing of credible but conflicting evidence to the trier of fact and must view the evidence in a light most favorable to the prosecution[,] resolv[ing] all inferences in favor of the prosecution.

2006 UT 29, ¶ 24 (second and third alterations in original) (footnote omitted) (citations omitted) (internal quotation marks omitted). "A

defense attorney who assumes that the magistrate will conduct a preliminary hearing that comports with [the limitation expressed in] article I, section 12" thus "does not have an incentive to prepare to thoroughly cross-examine on credibility[,] . . . present or develop positive information concerning her client[, or] . . . develop affirmative defenses." *Goins*, 2017 UT 61, ¶ 34.

¶73 A bail hearing is similarly limited to answering, in part, a "narrow and focal issue" — that is, whether substantial evidence of a crime exists, such that, if the other factors are present, the court can justify holding a defendant without bail until trial. *See Chynoweth*, 572 P.2d at 1082 (citation omitted). As we explained above, substantial evidence exists when the evidence presented provides a reasonable basis for a guilty jury verdict. *Id.*; *see also Kastanis*, 848 P.2d at 676 ("At [a bail] hearing, the trial court may not revoke bail unless the facts adduced by the State furnish a reasonable basis for a jury finding of a verdict of guilty of [the crime charged]."). The substantial evidence standard is met when the prosecution presents evidence capable of supporting a jury finding that the defendant is guilty beyond a reasonable doubt. *See Kastanis*, 848 P.2d at 676; *see also Scott*, 548 P.2d at 236 ("Since the right to bail is a fundamental right, the State must sustain the burden of proving the accused is within one of the exceptions [to that right]."); UTAH CODE § 77-20-1(7) (2020) ("After hearing evidence on a motion for pretrial detention, the court may detain the individual if: . . . the prosecution demonstrates substantial evidence to support the charge, and meets all additional evidentiary burdens required under Subsection (2) or Utah Constitution, Article I, Section 8.").

¶74 And whereas the purpose of the probable cause standard is to "ferret out groundless and improvident prosecutions," *Virgin*, 2006 UT 29, ¶ 19, the purpose of the substantial evidence standard is to ensure that the quantum of evidence presented by the State sufficiently justifies the denial of the defendant's right to freedom from pretrial incarceration. To achieve that purpose, Utah law gives "both parties the opportunity to make arguments and to present relevant evidence and information" as to pretrial release. UTAH CODE § 77-20-206(4)(a). At a bail hearing, moreover, "the prosecuting attorney and the defendant have a right to subpoena witnesses to testify." *Id.* § 77-20-206(4)(b).

¶75 During this process, a district court may make a series of credibility assessments. It may observe and assess witness demeanor and appearance. And unlike a magistrate making a bindover determination, a district court making a bail determination does not

view the evidence in a light most favorable to any party—instead, it may evaluate the strength of the evidence presented by both sides in an effort to determine if the State's evidence, "notwithstanding contradiction . . . by defense proof, . . . furnish[es] a reasonable basis for a [conviction]." *See Kastanis*, 848 P.2d at 676 (emphasis omitted) (citing *Chynoweth*, 572 P.2d at 1082). In other words, when evaluating whether bail should be denied, the district court may weigh conflicting pieces of evidence and ultimately decide that, in light of the conflict, there is not a basis on which a reasonable jury could reach a guilty verdict.

2. The District Court Did Not Err When It Concluded that Substantial Evidence Supported the Charges Against Randolph

¶76 Randolph argues that the district court erred when it concluded that there was substantial evidence to support the charges against him because "[t]he allegations in [his] case were 'contradicted [by defense proof] in material respects.'" (Citing *Elderbroom v. Knowles*, 621 So.2d 518, 520 (Fla. Dist. Ct. App. 1993).) As explained above, this presents a law-liked mixed question. To assess Randolph's claim, we review the district court's legal findings de novo, but grant its factual ones deference. *Supra* ¶ 44.

¶77 The district court applied the correct legal standard. The question for the district court was not, as Randolph suggests, whether Randolph could point to evidence that conflicted with or contradicted the State's. Evidence may be substantial even in the face of contradicting pieces of credible evidence. Indeed, *Chynoweth* recites that substantial evidence exists when "the facts adduced by the State, *notwithstanding contradiction of them by defense proof, . . .* furnish a reasonable basis for a verdict of [guilty]." 572 P.2d at 1082 (emphasis added) (citation omitted). And as we stated above, a district court may make its substantial evidence determination by weighing conflicting evidence. The district court's task is to decide whether the State has, even in light of the defendant's contrary evidence, placed into the record evidence sufficient to permit a reasonable jury to conclude that the defendant committed the charged offense.

¶78 That is what the district court did here. The State charged Randolph with four first-degree felonies: aggravated kidnapping, aggravated assault, rape, and forcible sodomy. In support of those charges, the State produced the probable cause statement containing Katrina's allegations. Katrina reported that Randolph "jumped into" her car, "grabbed [her] by the back of the neck," and "directed her to

find a parking spot that was more secure." She stated that Randolph "forced his penis into [her] mouth," despite her having told him that "she did not want to do anything with him." Katrina further recounted that when "she was eventually able to get up" and continue driving, Randolph once again told her to "find somewhere secure or it would not be good for her." Katrina stated that she "pulled into a parking lot" and Randolph "got on top of" her and "started to choke" her. According to Katrina, "Randolph then put his penis into [her] vagina" and "squeeze[d] her neck harder" every time she said "no." At the preliminary hearing, the State sought to corroborate this evidence with Katrina's sexual assault examination, which documented several "indicators of strangulation" and "an actively bleeding injury to [Katrina's] labia."

¶79 Randolph argued that because Katrina's physical examinations did not find any injury to Katrina's head, face, or neck, the substantial evidence standard had not been met. Those examinations, he argued, "suggest[ed] that allegations of strangulation . . . [were] false," and thus "call[ed] into question the credibility of the other allegations." And as to Katrina's sexual assault examination, Randolph argued that the injury to Katrina's labia could have been the result of consensual sex.

¶80 At the very most, Randolph's evidence pokes holes in the State's claim that Randolph strangled and raped Katrina. But poked holes do not demand that the district court conclude that the substantial evidence standard has not been satisfied. It only requires the district court to consider whether those holes render the State's evidence insufficient to allow a reasonable jury to convict. And the district court could have considered Katrina's statements about the alleged assault sufficient to support a jury verdict. *See, e.g.*, *State v. Jok*, 2021 UT 35, ¶ 31, 493 P.3d 665 ("[A] jury may appropriately convict a defendant on the basis of the 'uncorroborated testimony of the victim.'" (citation omitted)). Moreover, the State buttressed Katrina's statements with other portions of Katrina's sexual assault examination, which indicated that Katrina was suffering from "indicators of strangulation" and "an actively bleeding injury to [her] labia." As we explained above, the substantial evidence standard grants a court liberty to weigh the evidence and decide if the evidence presented by the State, despite contradiction by defense evidence, could support a reasonable jury reaching a guilty verdict. In this case, the State's evidence is sufficient, even in light of the potential inconsistencies Randolph highlights, to support such a

verdict. We accordingly affirm the district court's substantial evidence determination.

*B. The District Court Did Not Err When It Concluded There Was Clear and Convincing Evidence That Randolph Was Likely to Flee If Released*

¶81 Randolph next argues that the district court erred when it concluded there was clear and convincing evidence that Randolph was both a substantial danger to the community and likely to flee if released on bail. Under section 77-20-1(2)(c), a district court may deny a defendant bail if it finds clear and convincing evidence that the defendant is *either* a substantial danger *or* likely to flee if released on bail. So although the district court made both of these findings, if we find the district court correctly evaluated one, we need not address the other.

¶82 The district court concluded there was clear and convincing evidence that Randolph was likely to flee the jurisdiction if released on bail because "[Randolph] has few ties to Utah and . . . had to be brought back from California to actually face the charges here."

¶83 Randolph claims the district court erred. In his view, the evidence the district court relied upon cannot constitute clear and convincing evidence that he was likely to flee the jurisdiction of the court if released on bail. He argues that the evidence he produced eroded the persuasiveness of the State's evidence such that it fell below the clear and convincing mark. Randolph countered the State's evidence with the fact that he was in California because he was a seasonal worker, and with his email to the Salt Lake Legal Defender Association voicing his intent to defend his case.

¶84 We review a district court's finding that there was clear and convincing evidence that the defendant was likely to flee if released on bail for clear error. *Supra* ¶ 49. The clear and convincing standard "implies something more than the . . . preponderance, or greater weight, of the evidence; and something less than proof beyond a reasonable doubt." *Essential Botanical Farms, LC v. Kay*, 2011 UT 71, ¶ 24, 270 P.3d 430 (citation omitted). It "demands the introduction of evidence that makes 'the existence of the disputed facts . . . very highly probable.'" *State ex rel. K.T.*, 2017 UT 44, ¶ 9 n.3, 424 P.3d 91 (alteration in original) (citation omitted).

¶85 The State produced evidence that Randolph left Utah sometime after the alleged incident and failed to return to face the underlying charges despite knowing there was a warrant for his arrest. The State further demonstrated that Randolph had substantial

ties outside of Utah—a Georgia driver license and family in Georgia. The State also introduced evidence that Randolph had told others of his "plan[] to leave Utah to go to Oregon and California." This evidence—ties to another state, expressed intentions to leave the jurisdiction of the court, and the fact that Randolph left the state of Utah and refused to voluntarily return to face the charges against him—provided clear and convincing evidence that Randolph was likely to flee. Randolph's contrary evidence does not undermine the district court's conclusion. We thus see no clear error in the district court's decision, and we affirm.

*C. The District Court Did Not Err When It Concluded That There Were No Conditions of Pretrial Release That Would Reasonably Ensure the Safety of Katrina and the Public, Randolph's Appearance in Court, and the Furtherance of Justice*

¶86 Randolph lastly argues that the district court erred when it concluded that there were no conditions of release that would reasonably ensure the safety of Katrina and the public and Randolph's appearance in court. He claims that there are "a long list of conditions designed to ensure that a defendant shows up in court," and that he agreed to one of them: electronic monitoring. He also argues that considering his financial assets, "the financial conditions of bail would have been effective."

¶87 The district court's conclusion that there are no conditions available that would reasonably ensure the safety of the public, the defendant's appearance in court, and the furtherance of the criminal justice process is a factual one and shall not be set aside unless clearly erroneous. *Supra* ¶ 52. "The [district] court's factual findings will not be considered clearly erroneous unless they are 'not adequately supported by the record, resolving all disputes in the evidence in a light most favorable to the [district] court's determination.'" *Save Our Schs. v. Bd. of Educ. of Salt Lake City*, 2005 UT 55, ¶ 9, 122 P.3d 611 (citation omitted). And Randolph bears the burden of "demonstrat[ing] that even viewing the evidence in a light most favorable to the court below, the evidence is insufficient to support the findings of fact." *Id.* ¶ 10 (citation omitted).

¶88 Randolph has not met this burden. While he argues that he agreed to electronic monitoring and "the financial conditions of bail," he makes no argument that the district court's conclusion that these were insufficient to secure his attendance was unsupported by the evidence the State presented. And so we affirm the district court.

## CONCLUSION

¶89 We review de novo the district court's decision that substantial evidence existed to deny Randolph bail. And we defined the substantial evidence standard in *State v. Kastanis*, 848 P.2d 673 (Utah 1993). Although Randolph would like us to abandon that standard, he has not met his burden of convincing us to depart from *stare decisis* principles. We review for clear error the district court's conclusion that Randolph was likely to flee Utah if not held on bail, and that no condition of pretrial release could reasonably ensure the public's safety or his appearance in court. We find no error in the district court's determinations. We affirm.