*This opinion is subject to revision before final publication in the Pacific Reporter*

**2025 UT 1**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Respondent,*

*v.*

DEON ANDRE JENNINGS,
*Petitioner.*

No. 20230720
Heard September 9, 2024
Filed February 20, 2025

On Certiorari to the Utah Court of Appeals

Third District Court, Salt Lake County
The Honorable Su Chon
No. 221904766

Attorneys:

Derek E. Brown, Att'y Gen., Emily Sopp, Asst. Solic. Gen.,
Salt Lake City, for respondent

Erick Grange, Amy Powers, Salt Lake City, for petitioner

JUSTICE PETERSEN authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE PEARCE,
JUSTICE HAGEN, and JUSTICE POHLMAN joined.

JUSTICE PETERSEN, opinion of the Court:

## INTRODUCTION

¶1 Defendant Deon Jennings was arrested and charged with first-degree murder after he stabbed Willie Houston twice in the back and Houston died from his injuries. At a bail hearing in the district court, Jennings argued that he should be released on bail pending trial because the State had not presented "substantial evidence to support the charge" of first-degree murder, as required

by the Utah Constitution and the Utah Code. He asserted that he had not intended to injure Houston and that he had acted in self-defense. The district court rejected Jennings' arguments and ordered that he be held in custody without bail. Jennings appealed that decision, and the court of appeals affirmed.

¶2 Jennings argues on certiorari that we should reverse the court of appeals' decision because the State failed to present substantial evidence to support the first-degree murder charge at the bail hearing. Specifically, he argues that the State did not present substantial evidence to 1) prove the applicable mens rea, and 2) disprove that he acted in self-defense.

¶3 We affirm the court of appeals' decision. We conclude that the State presented substantial evidence of the requisite mens rea. With respect to whether the State disproved self-defense by substantial evidence, the parties disagree as to whether the State carries such a burden at a bail hearing. However, we do not resolve this legal question here because even assuming the State carries this burden, we agree with the court of appeals that the State disproved that Jennings acted in self-defense by substantial evidence.

## BACKGROUND[1]

¶4 After receiving a 911 report of a stabbing, police arrived to find Willie Houston lying on the kitchen floor of a neighbor's apartment, unconscious and covered in blood. The blood came from two sharp-force injuries on his back—one three inches deep and the other five. In other words, Houston had been stabbed twice in the back. Houston was taken to the hospital for treatment, but he died from his injuries. Before losing consciousness, Houston's neighbor asked him, "Who did this? What happened?" Houston replied, "My nephew." His "nephew" was defendant Deon Jennings.

¶5 Houston had been in a relationship with Jennings' aunt for about fifteen years. Although Houston and Jennings were not blood relatives, Jennings had been known to call Houston his "uncle," and Houston had been known to call Jennings his "nephew."

¶6 Police followed a trail of blood from the apartment where they found Houston, down the sidewalk, in and around Houston's

---

[1] These background facts are taken from the preliminary hearing record, which the State relied on at the bail hearing.

car, and back to the scene of the crime: the apartment that Houston shared with Jennings' aunt. She later testified that she and Houston lived together in the apartment. She also explained that Jennings did not have a key to the apartment and did not have her permission to be there that night, or any night for that matter. Nonetheless, both Houston and Jennings had been in the apartment together on the day in question.

¶7 The only direct account of what happened inside the apartment comes from statements that Jennings made to an investigating detective, Detective Johanson. According to Jennings, he and his uncle had been hanging out, drinking beers together, when they got into an argument. Houston asked Jennings to leave the apartment multiple times. Jennings refused and demanded that Houston go instead. At one point, Houston did briefly leave out the front door, and Jennings quickly tried to lock him out. But Jennings was too slow, and Houston forced his way back in.

¶8 As Houston pushed open the door, the two men fell together onto the floor "in a heap," with Houston on top of Jennings. They then got into "some sort of tussle." While still underneath Houston, Jennings reached for an object to use against Houston and "struck" Houston in the back with it. But he was not entirely sure what the object was. Jennings "suspected, maybe, it was a screwdriver at one point . . . but he was never specific or clear." Jennings thought "he struck [Houston] at least twice" "somewhere in his back ribs torso area."

¶9 Jennings, however, sustained no injuries. At one point, Jennings told Detective Johanson that he "thought he might've been hit over the head" during the altercation. But he later changed this aspect of his story, stating that "he wasn't ever hit over the head" and that, in fact, he "wasn't hit" at all that night. Jennings also stated that Houston never attempted to strike him. Moreover, Detective Johanson specifically asked Jennings whether he felt "threatened" or "like something was going to happen to [him]," and "[Jennings] never said that is how he felt."

¶10 After Jennings stabbed Houston twice in the back with the object, Houston left the apartment and eventually made it to a neighbor's apartment—leaving a trail of blood behind him. He asked the neighbors to call the police.

¶11 Meanwhile, Jennings did not call 911. Nor did he follow Houston to check on him. Instead, he locked the front door of the apartment, gathered his things, and left out the back "to go find

another beer." When Detective Johanson asked Jennings why he didn't check on Houston, Jennings' "response was that he honestly didn't care."

¶12 Jennings laid low for three days until a relative convinced him to call the police. Through a series of phone calls, police located Jennings at his apartment and arrested him. The State charged Jennings with first-degree murder and requested that he be held without bail.

*Preliminary Hearing*

¶13 At the preliminary hearing, the State presented evidence from Detective Johanson about her crime scene investigation and her interviews with Jennings. In one of the interviews, Jennings reenacted how he had pushed Houston away with his left hand and struck him in the back with his right, which was clenching the object. And during the preliminary hearing, Detective Johanson demonstrated Jennings' reenactment on the stand. The prosecutor described the Detective's movements for the record: "And you were using your left hand in a pushing motion, as if pushing away from your body?" Johanson replied, "Yes." "And then you—you had clenched your fist as if you were moving that up—in an up-and-down motion with your right hand." Again, Johanson replied affirmatively, "Uh-huh."

¶14 The State also presented testimony from Jennings' aunt. Although she was not at the apartment on the day of the altercation, she spoke about her relationship with both Houston and Jennings.

¶15 Jennings cross-examined the State's witnesses but did not call any witnesses of his own. The district court ultimately bound him over on the first-degree murder charge.

*Bail Hearing*

¶16 Two months later, Jennings requested pretrial release, and the court held a bail hearing. Neither party offered new evidence. Both relied primarily on the evidence already offered at the preliminary hearing.[2]

---

[2] The parties also made various evidentiary proffers at the bail hearing. Jennings alleges that many of the State's proffers were unsupported, or even contradicted, by the evidence from the preliminary hearing. We need not resolve these evidentiary

(continued . . .)

¶17 Jennings argued that the State had not met its burden to present "substantial evidence to support the charge," as required by article I, section 8 of the Utah Constitution and the Bail Statute, Utah Code section 77-20-201. And he argued that he had been acting in self-defense because there was a "fight that ensued in which both parties fell to the ground." And Jennings argued that Houston's wounds were consistent with his account of the fight: "that he struck the deceased in the back several times while the deceased was on top of him . . . attacking [him]." Jennings also argued that the district court should consider Houston's toxicology results—which showed both methamphetamine and cocaine post-mortem—in considering "who was the primary aggressor."

¶18 The prosecution cast the case in a distinctly different light, arguing to the court, "There's clear intent here, Judge, and statements from the defendant's own mouth that he was intend[ing] to attack [Houston,] and . . . there's no self-defense claim here." On that point, the State argued that "using a weapon while somebody's on top of you without a weapon is not a claim for any kind of self-defense or any kind of reasonable way to increase the level of violence used."

¶19 After hearing both sides, the district court ordered Jennings to be held without bail and concluded that "there was no self-defense . . . in what happened there." The court first observed that Jennings "had no right to be in the home," whereas Houston did and was trying to regain entry to his own home. The court then reasoned that "the nature of the injuries in the back [do] not suggest self-defense." And the court decided that it would not consider "the argument about meth and cocaine" in reaching its conclusion, "because those drugs cause [different] people to react differently." Further, the district court observed that "nothing" from the preliminary hearing suggested that Houston was "aggressive or hostile" that night.[3]

---

disputes, however, because the record indicates that the district court did not rely on any of the contested proffers in reaching its final ruling. Rather, it relied on the evidence and testimony presented at the preliminary hearing. We do the same.

[3] The district court also concluded that the State had shown "by clear and convincing evidence" that Jennings posed "a substantial danger to any other individual or the community" and that he was

(continued . . .)

¶20 Jennings appealed.

*Court of Appeals' Decision*

¶21 In the court of appeals, Jennings argued that the State did not present substantial evidence of the crime charged, and that it had failed to disprove his self-defense claim by substantial evidence. The court of appeals disagreed on both issues and affirmed the district court's bail determination.

¶22 The court of appeals concluded that "Jennings's statements to the detective provided substantial evidence to support the charge."[4] It applied the substantial evidence standard enunciated in *Randolph v. State*, which "is met when the facts adduced by the State, notwithstanding contradiction of them by defense proof, warrant the conclusion that if believed by a jury they furnish a reasonable basis for a verdict of guilty." 2022 UT 34, ¶ 64, 515 P.3d 444 (cleaned up). Referencing the elements of first-degree murder, the court of appeals concluded that the evidence presented at the preliminary hearing "provide[d] a reasonable basis for a jury to conclude that Jennings intended to cause serious injury to the deceased, and that he committed an act dangerous to human life."

¶23 The court of appeals next considered Jennings' argument that the State had failed to disprove his self-defense claim by substantial evidence. Noting that the parties disagreed as to whether the State had the burden of disproving self-defense at the bail-hearing stage, the court of appeals deemed it unnecessary to decide the issue. It explained, "even if we assume for the sake of argument that the State was required to present substantial evidence that a defendant did not act in self-defense at a detention hearing, the State met its burden in this case."

¶24 In making this determination, the court noted that Jennings had no authority to be in the apartment and had been asked to leave. It further reasoned that Jennings' own statements demonstrated that: "(1) the deceased never made any threats of

---

"likely to flee the jurisdiction of the court if released"—at least one of which must be found to deny bail under Utah Code section 77-20-201(1)(c). Neither of these findings have been challenged on appeal.

[4] The court of appeals ruled on Jennings' appeal by way of an unpublished order of affirmance. As a result, there is no citation for the court of appeals' ruling.

death or serious bodily injury towards him; (2) Jennings never felt threatened by the deceased; and (3) Jennings was never hurt by the deceased." Thus, the court of appeals concluded that "there was substantial evidence that Jennings did not act in self-defense."

¶25 Jennings petitioned for certiorari, which we granted. We have jurisdiction under Utah Code section 78A-3-102(3)(a).

## STANDARD OF REVIEW

¶26 "On certiorari, we review the decision of the court of appeals and not that of the district court." *State v. Brake*, 2004 UT 95, ¶ 11, 103 P.3d 699. "In doing so, we review for correctness, giving the court of appeals' conclusions of law no deference." *State ex rel. A.T. v. A.T.*, 2001 UT 82, ¶ 5, 34 P.3d 228.

¶27 Whether the State presented "substantial evidence" of the charge at the bail hearing is a "law-like mixed question" that is reviewed de novo. *Randolph v. State*, 2022 UT 34, ¶ 44, 515 P.3d 444. Any factual findings underlying the district court's decision are reviewed with deference and overturned "only when they are clearly erroneous." *Id.*

## ANALYSIS

¶28 On appeal, Jennings argues that he was entitled to bail for two reasons. First, he argues that the State failed to present substantial evidence of the requisite mens rea for first-degree murder. Second, Jennings argues that the State failed to prove by substantial evidence that he did not act in self-defense.

¶29 We first discuss the substantial evidence standard, which applies to both issues before us. We next analyze Jennings' mens rea argument and then turn to his self-defense argument. Ultimately, we agree with the court of appeals that the State presented substantial evidence of both, and we affirm.

I. AT A BAIL HEARING, THE PROSECUTION MUST PRESENT SUBSTANTIAL EVIDENCE OF THE CHARGE

¶30 In Utah, criminal defendants have a constitutional right to bail. UTAH CONST. art. I, § 8; *see also State v. Barnett*, 2023 UT 20, ¶ 2, 537 P.3d 212. The Utah Constitution establishes this right, and it specifies some exceptions to it. Article I, section 8 states:

> All persons charged with a crime shall be bailable except:

(a) persons charged with a capital offense when there is substantial evidence to support the charge; or

(b) persons charged with a felony while on probation or parole, or while free on bail awaiting trial on a previous felony charge, when there is substantial evidence to support the new felony charge; or

(c) persons charged with any other crime, designated by statute as one for which bail may be denied, if there is substantial evidence to support the charge and the court finds by clear and convincing evidence that the person would constitute a substantial danger to any other person or to the community or is likely to flee the jurisdiction of the court if released on bail.

UTAH CONST. art. I, § 8(1).

¶31 The Bail Statute mirrors the language of article I, section 8 and designates the "other crime[s]" for which bail may be denied. *Id.* art. I, § 8(1)(c); *see* UTAH CODE § 77-20-201(1). Relevant here, it states:

An individual charged with, or arrested for, a criminal offense shall be admitted to bail as a matter of right, except if the individual is charged with . . . a felony when there is substantial evidence to support the charge and the court finds, by clear and convincing evidence, that . . . the individual would constitute a substantial danger to any other individual or to the community . . . [or] is likely to flee . . . if the individual is released on bail.

UTAH CODE § 77-20-201(1)(c).

¶32 Jennings was charged with first-degree murder. And he does not dispute that first-degree murder is one of the crimes "designated by statute as one for which bail may be denied." UTAH CONST. art. I, § 8(1)(c); UTAH CODE § 77-20-201(1)(c). Accordingly, the only question is whether "there is substantial evidence to support the charge." UTAH CONST. art. I, § 8(1)(c).[5]

---

[5] The district court also had to determine whether Jennings was a danger to the community or a flight risk. *See* UTAH CONST. art I, § 8(c); UTAH CODE § 77-20-201(1)(c). It determined by clear and

(continued . . .)

¶33 In *Randolph v. State*, we analyzed the original public meaning of the term "substantial evidence" in article I, section 8. 2022 UT 34, ¶¶ 56–65, 515 P.3d 444. We explained that in 1895, when the Utah Constitution was ratified, article I section 8 read: "All prisoners shall be bailable by sufficient sureties, except for capital offenses *when the proof is evident or the presumption strong*." *Id.* ¶ 58 (emphasis added) (quoting UTAH CONST. art. I, § 8 (amended 1973)); *see also State v. Kastanis*, 848 P.2d 673, 674 (Utah 1993) (per curiam).

¶34 In 1988, Utahns amended article I, section 8 to its current form. *See Randolph, 2022 UT 34,* ¶ 58. Relevant here, the language "proof is evident or the presumption strong" was changed to "substantial evidence to support the charge." *See Proposition No. 1 Bail Amendment*, UTAH VOTER INFORMATION PAMPHLET, 10 (1988), https://vote.utah.gov/wp-content/uploads/sites/42/2023/09/1988-VIP.pdf; *see also* UTAH CONST. art. I, § 8. We observed in *Randolph*, however, that this modification was implemented "for the sole purpose of modernizing the language." 2022 UT 34, ¶ 60 (quoting *Kastanis*, 848 P.2d at 675). It was not intended to alter the quantity of evidence necessary to support a denial of bail under the "proof is evident or the presumption strong" standard. *Id.* at ¶¶ 60–61 (cleaned up). And this court stated in *Chynoweth v. Larson*, that the proof-evident/presumption-strong standard is met when "the facts adduced by the State, notwithstanding contradiction of them by defense proof, warrant the conclusion that if believed by a jury they furnish a reasonable basis for a verdict of [guilty]." 572 P.2d 1081, 1082 (Utah 1977) (cleaned up).

¶35 Because the 1988 amendment was not intended to substantively change the quantum of evidence required by article I, section 8, the substantial evidence standard does not materially differ from the standard we described in *Chynoweth*. In *Randolph*, we held that the "substantial evidence standard is met when the prosecution presents evidence capable of supporting a jury finding that the defendant is guilty beyond a reasonable doubt." 2022 UT 34, ¶ 73; *see also Kastanis*, 848 P.2d at 676 ("At [a bail] hearing, the trial court may not revoke bail unless the facts adduced by the State

---

convincing evidence that he was both, and Jennings does not dispute those findings on appeal. *See supra* ¶ 19 n.3.

furnish a reasonable basis for a jury finding of a verdict of guilty of [the crime charged].").

¶36 "[T]he purpose of the substantial evidence standard is to ensure that the quantum of evidence presented by the State sufficiently justifies the denial of the defendant's right to freedom from pretrial incarceration." *Randolph*, 2022 UT 34, ¶ 74. The district court must reach this decision without viewing the evidence in a light favorable to any party—instead, it must evaluate the strength of the evidence presented by both sides and make credibility judgments where necessary. *See id.* ¶¶ 74–75.

¶37 We now assess whether the State presented substantial evidence of the requisite mental state for first-degree murder.

## II. THE STATE PRESENTED SUBSTANTIAL EVIDENCE OF THE APPLICABLE MENS REA

¶38 Jennings argues that, at the bail hearing, the State failed to present substantial evidence of the mens rea required to support the first-degree murder charge against him. A person commits first-degree murder when "(a) the actor intentionally or knowingly causes the death of another individual; [or] (b) intending to cause serious bodily injury to another individual, the actor commits an act clearly dangerous to human life that causes the death of the other individual." UTAH CODE § 76-5-203(2)(a)–(b), (3)(a)(i). The court of appeals concluded that the State had presented substantial evidence of the mens rea required in subsection 203(2)(b)—namely, that Jennings intended to cause serious bodily injury to Houston when he stabbed Houston twice in the back with a sharp object, an act clearly dangerous to human life that caused Houston's death. *Id.* § 76-5-203(2)(b). We agree.

¶39 A person acts intentionally "when it is his conscious objective or desire to engage in the conduct or cause the result." *Id.* § 76-2-103(1). We often look to circumstantial evidence to infer intent "[b]ecause intent is a state of mind, which is rarely susceptible of direct proof." *State v. Logue*, 2018 UT App 156, ¶ 17, 436 P.3d 136 (cleaned up). Of course, intent may be proven by direct evidence as well, if available. *See State v. Minousis*, 228 P. 574, 576 (Utah 1924) ("It is . . . well settled that . . . specific intent may be proved by circumstantial, as well as direct, evidence . . . ."). Here, we have both.

¶40 Jennings told Detective Johanson that when Houston pushed his way back into the apartment the two of them

"collapse[d] into some sort of tussle" on "the ground." With Houston on top of him, Jennings stated that he grabbed an object off the floor and began striking Houston with it. He claimed that he did not know what the object was. Although at one point, Jennings told Detective Johanson that he "suspected, maybe, it was a screwdriver."

¶41  Further, in one of his interviews with Detective Johanson, Jennings reenacted the physical motions of pushing Houston away with his left hand while stabbing him in the back with his right. And during the preliminary hearing, Detective Johanson demonstrated Jennings' reenactment on the stand. The prosecutor described Detective Johanson's movements for the record: "And you were using your left hand in a pushing motion, as if pushing away from your body?" Johanson replied, "Yes." "And then you— you had clenched your fist as if you were moving that up—in an up-and-down motion with your right hand." Again, Johanson replied affirmatively, "Uh-huh."

¶42 In addition to Jennings' direct statements about and demonstration of his actions, Houston's injuries provide circumstantial evidence of Jennings' intent. Houston had two deep stab wounds in his back, made by a sharp object.

¶43 Jennings argues that this does not constitute substantial evidence that he intended to cause serious bodily injury to Houston for a couple of reasons. First, he argues that the evidence is insufficient because he did not know what he was holding or if it could cause serious bodily injury. In other words, he argues that if he did not know what he was holding, how could he have known that using it to strike Houston was likely to cause serious bodily injury? Second, he notes that he admitted only to "striking" Houston, and that he never said he "stabbed" him.

¶44 Had Jennings stabbed Houston once, these arguments might be more persuasive. But Jennings stabbed Houston twice, at depths of three and five inches. When Jennings first grabbed the object in the heat of the moment, perhaps he truly did not know its lethality. But with the object clenched in his right hand, he plunged it several inches into Houston's back. And Houston's injuries, and Jennings' statements and reenactment, show that Jennings then pulled the object out of Houston's body and plunged it inches deep into his back again. After stabbing Houston once, it is difficult to believe that when Jennings pulled the object out of Houston's body

and did it again, he still had no idea that the object he was holding could cause "serious bodily injury."

¶45 For these reasons, we conclude that the State presented substantial evidence of Jennings' criminal intent, because the evidence provides a reasonable basis for a jury to conclude that Jennings intended to cause serious bodily injury to Houston. Therefore, we agree with the court of appeals that the State presented substantial evidence that Jennings had the requisite mental state.

III. THE STATE PRESENTED SUBSTANTIAL EVIDENCE DISPROVING THAT JENNINGS ACTED IN SELF-DEFENSE

¶46 Finally, Jennings argues that the State failed to present substantial evidence that he did not act in self-defense and, therefore, that the State did not produce "evidence capable of supporting a jury finding that the defendant is guilty beyond a reasonable doubt." *Randolph v. State*, 2022 UT 34, ¶ 73, 515 P.3d 444. The court of appeals correctly concluded otherwise.

¶47 Before proceeding to the merits of Jennings' argument, we first note the parties' disagreement as to whether the State even has a burden to disprove self-defense—assuming it is at issue—at the bail hearing stage of a criminal proceeding.

¶48 Jennings argues that once self-defense is at issue in a bail hearing, the burden then shifts to the State to disprove self-defense by substantial evidence. He premises his argument on the meaning of the phrase "substantial evidence" in article I, section 8 of the Utah Constitution. He first observes our holding in *Randolph* that the substantial evidence standard is met when the State produces evidence "capable of supporting a jury finding that the defendant is guilty beyond a reasonable doubt" at trial. *Id.* And he notes that in the trial context, "the State carries the burden of proving beyond a reasonable doubt each element of an offense, including the absence of an affirmative defense once the defense is put into issue." *State v. Low*, 2008 UT 58, ¶ 45, 192 P.3d 867 (cleaned up). Jennings argues that, taken together, these holdings require the conclusion that if self-defense is put at issue in a bail hearing, the burden shifts to the State to disprove it by substantial evidence. He reasons that even if the State proved every element of first-degree murder at trial beyond a reasonable doubt, a jury could not convict him if self-defense was at issue and the State failed to disprove it.

¶49 The State argues that it has no burden to disprove self-defense, or any other affirmative defense, at a bail hearing. It focuses on other language in article I, section 8 and the Bail Statute, specifying that the State need only present "substantial evidence to support *the charge*." UTAH CONST. art. I, § 8(1)(c) (emphasis added); UTAH CODE § 77-20-201 (1)(c). And since an affirmative defense is not an element of the "charge," the State contends that it had no constitutional or statutory duty to prove the absence of self-defense at Jennings' bail hearing. *See State v. Knoll*, 712 P.2d 211, 214 (Utah 1985) ("Absence of self-defense is not an element of a homicide offense."). The State further argues that the narrow purpose of a bail hearing is to determine whether there is enough evidence of the crime charged to hold the defendant in custody. And requiring the State to disprove affirmative defenses falls outside that purpose.

¶50 We agree with the court of appeals that this question is not determinative in this case. The court of appeals correctly concluded that, even assuming the State bears the burden of disproving self-defense at a bail hearing, it did so here. And, "[i]n light of the great gravity and delicacy of constitutional questions," our court generally "will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of." *State v. Argueta*, 2020 UT 41, ¶ 55, 469 P.3d 938 (cleaned up), *abrogated on other grounds by State v. Green*, 2023 UT 10, 532 P.3d 930. That is the case here.

¶51 Under Utah law, an individual "is justified in threatening or using force against another individual when and to the extent that the individual reasonably believes that force or threat of force is necessary to defend the individual or another individual against the imminent use of unlawful force." UTAH CODE § 76-2-402(2)(a).[6] In assessing the reasonableness of this belief,

_____

[6] The Utah Code contains two subtypes of self-defense: lethal and non-lethal. *See* UTAH CODE § 76-2-402(2)(a)–(b). The parties have not explicitly argued which self-defense standard should apply in this case, but both applied section 76-2-402(2)(a) — the non-lethal standard — in their briefs. This standard, quoted in full above, requires that the defendant reasonably believed use of force was necessary to defend himself or another "against the imminent use

(continued . . .)

the trier of fact may consider: (a) the nature of the danger; (b) the immediacy of the danger; (c) the probability that the unlawful force would result in death or serious bodily injury; (d) the other individual's prior violent acts or violent propensities; (e) any patterns of abuse or violence in the parties' relationship; and (f) any other relevant factors.

*Id.* § 76-2-402(5).

¶52   As we explained in *State v. Sorbonne*, this standard "is not a purely objective one." 2022 UT 5, ¶ 27, 506 P.3d 545 (cleaned up). The requirement of individual belief necessarily "introduces a component of subjectivity." *Id.* And requiring that this belief be reasonable "introduces a component of objectivity." *Id.* ¶ 28.

¶53   There was substantial evidence before the district court that Jennings did not reasonably believe that the force he used against Houston was necessary to defend himself against an imminent use of unlawful force by Houston. As a threshold matter, Jennings' statements indicate that he did not subjectively feel threatened by Houston during the incident. The only evidence cutting in Jennings' favor on this point is the fact that he told Detective Johanson that during the initial argument over who should leave the apartment Houston said something along the lines of, "Well, if you don't want to leave, I have something for you." Whether this vaguely foreboding language rises to the level of a threat of physical violence is unclear. But what we do know is that Jennings did not interpret it that way. Detective Johanson specifically asked Jennings, "did you feel threatened? Were you – did you feel like something was going to happen to you?" And she testified that Jennings "never said that is how he felt." When the prosecutor asked Detective Johanson whether Jennings indicated that Houston "had ever made any threats of death or serious bodily injury toward him," she replied, "He did not."

---

of unlawful force." *Id.* By contrast, the lethal subsection sets a more exacting standard, requiring that the defendant reasonably believed force was necessary "to prevent death or serious bodily injury" to himself or another. *Id.* § 76-2-402(2)(b). Because both sides have applied the non-lethal standard found in subsection (a), we do the same without opining on whether that is the correct standard here.

¶54  Further, the facts here suggest that even if Jennings had subjectively believed Houston posed an imminent threat of danger, that belief would not have been reasonable. Viewing Jennings' actions in context, Houston was rightfully present in his own home, he asked Jennings to leave, and Jennings refused to do so. Jennings then attempted to lock Houston out of his own apartment. Houston was able to push his way back in, and this led to the two men falling together onto the floor.

¶55  Jennings' account of how Houston ended up on top of him suggests it was accidental, not an aggressive attack by Houston. Houston was on one side of the door attempting to regain entry. Jennings was on the other side trying to keep him out. The two pushed against each other until the equilibrium broke, and they "collapse[d] into some sort of tussle." Jennings similarly said that the pair "*fell* on the floor together in a heap." (emphasis added).

¶56  Further, Jennings' account does not indicate that Houston ever attempted to strike him that night. Jennings did, at one point, tell Detective Johanson that he thought he might have been "hit over the head" by Houston leading up to the altercation, but he later retracted that version of events, clarifying "that he wasn't ever hit over the head and that he really doesn't think he ever got hit." The fact that Jennings left the altercation unscathed corroborates this.

¶57  Thus, Houston, unarmed, landed on top of Jennings, and Jennings responded by grabbing what might have been a screwdriver and stabbing Houston in the back with it twice. In that moment, the facts suggest that any belief Jennings might have had that Houston posed an imminent threat of danger would not have been objectively reasonable. And in any event, the extent of the force that Jennings used against Houston was out of proportion to any threat Houston might have posed. *See State v. Wall*, 2020 UT App 168, ¶ 20, 479 P.3d 355 ("It is assault and not self-defense when a defendant fights back with a level of violence that is out of proportion to the provocation. Defensive force thus must be proportionate to the requirements of the situation." (cleaned up)).

¶58  Jennings contends that even if self-defense does not appear objectively reasonable on the face of things, it becomes "objectively reasonable to believe there was immediate danger to his person" if you take into consideration other factors. For example, he references a history of violence between him and Houston. Detective Johanson testified that the police had been

called to the apartment previously due to disputes between Jennings and Houston. Specifically, about a year before this altercation, local police responded after Jennings reported that Houston had attacked him. We agree that the history of violence is an important factor to consider in assessing the reasonableness of Jennings' belief, *see* UTAH CODE § 76-2-402(5)(d)–(e). But there was scant information about the nature of the past disputes before the district court—and it was not enough to counter the facts described above.

¶59 Jennings also points to an Instagram message he sent to a relative after the incident, which stated that Houston attacked him first. But this statement to a relative does not outweigh Jennings' own description of the altercation to Detective Johanson, which suggests that Houston "fell" on top of Jennings, not that Houston attacked him.

¶60 Finally, Jennings argues that it was error for the district court and the court of appeals not to consider the toxicology results that showed illegal drugs in Houston's system. But as the district court explained, there was no testimony regarding Houston's drug use or the effect the drugs may have had on him at the time in question. Nor was there evidence of the effects of methamphetamine or cocaine more generally. Without such evidence, the district court would have been merely speculating as to whether the drugs made Houston behave in an aggressive way that Jennings reasonably perceived as threatening.

¶61 Thus, the countervailing evidence Jennings highlights does not persuade us that the court of appeals erred. The substantial evidence standard is met when "the facts adduced by the State, notwithstanding contradiction of them by defense proof, warrant the conclusion that if believed by a jury they furnish a reasonable basis for a verdict of guilty." *Randolph*, 2022 UT 34, ¶ 62 (cleaned up). Jennings' own statements demonstrate that Houston never injured Jennings, that Houston never seriously threatened Jennings, and that Jennings never felt threatened by Houston during their altercation. The court of appeals concluded that this was substantial evidence that Jennings was not acting in self-defense when he stabbed Houston. We agree.

## CONCLUSION

¶62 We conclude that the court of appeals correctly determined that the State presented substantial evidence of first-degree murder, including that Jennings had the requisite mens rea,

at Jennings' bail hearing. And even assuming that the State must also disprove self-defense at a bail hearing when it has been put at issue, we agree that the State submitted substantial evidence showing that Jennings did not act in self-defense.

¶63  We affirm.

————————